ENVIROGAS, INC., Respondent, v TOWN OF WESTFIELD et al., Appellants.

Fourth Department, July 9, 1981

APPEARANCES OF COUNSEL

*Damon, Morey, Sawyer & Moot* of counsel *(Walter F. Drag* and *James N. Schmit*, attorneys), for appellants.

*Moot, Spraugue, Marcy, Landy, Fernbach & Smythe (Richard F. Griffin* of counsel), for respondent.

*Hodgson, Russ, Andrews, Woods & Goodyear (Daniel M. Darrah* of counsel), *amicus curiae.*

*John L. Goodell* for Town of Kiantone, *amicus curiae.*

OPINION OF THE COURT

CARDAMONE, J. P.

This case presents a narrow question, the answer to which has broad implications. We are asked to ascertain whether under the provisions of section 268 of the Town Law a town may be authorized to require that a bond be posted to insure compliance with a zoning ordinance which placed restrictions on the drilling of gas and oil wells. If so, do the bond requirements unlawfully discriminate in violation of the equal protection clauses of the State and Federal Constitutions.

This is a case of first impression because, although section 268 has been part of the Town Law for nearly 50 years, no case law relevant to this question has been developed.

The undisputed facts are simple. Envirogas, Incorporated, a New York corporation, is in the business of developing and producing oil and natural gas. It has drilled a number of wells in Western New York, including at least four wells in the Town of Westfield. Other commercial gas companies are active in Westfield, drilling over 129 wells there in recent years.

Concerned that unrestricted drilling was hazardous and disruptive to the environment, the town board amended the town's zoning ordinance in 1974 to require that gas wells could not be located less than 200 feet from any building, property line or public right of way and that, following drilling, the driller must restore the contour of the property and seed the land (Town of Westfield Zoning Ordinance, art II, § 2-02, subd 6 [Amdt No. I], enacted Aug. 20, 1974). Paragraph (h) of subdivision 6 required that commercial gas companies post a $5,000 compliance bond in favor of the town. The bond requirement does not apply to landowners drilling on their own property solely for the purpose of obtaining gas for their own use or the use of their tenants.

For the four wells drilled in the town, Envirogas posted four $5,000 bonds. On May 1, 1980 the town board repealed the 1974 amendment and enacted a new subdivision 6 (Amdt No. II). The new ordinance stated that the purpose of regulating gas drilling is to minimize the risk of harm from accidents and to protect the aesthetic quality of the town. A new bonding requirement provides that drillers

post a bond of $5,000 for each well drilled or, in the alternative, post one $25,000 bond, "the condition of the bond being that the driller shall comply with all the terms, conditions, and requirements of this subsection" (Town of Westfield Zoning Ordinance, art II, § 2-02, subd 6, par [A]). The exemption for landowners drilling on their own property for their own use was re-enacted.

Plaintiff, which had commenced this declaratory judgment action in January, 1980, later served an amended complaint in May, 1980 in order to include allegations with respect to Amendment No. II. Plaintiff alleged that subdivision 6 was void in its entirety for a number of statutory and constitutional reasons. It thereafter moved for partial summary judgment, contending that the requirement for a compliance bond is invalid as beyond the scope of the town board's authority and that its enactment denies plaintiff's right to equal protection of the laws, guaranteed by the United States and New York State Constitutions. Plaintiff's motion was granted on the ground that the town board had no authority to impose such a bonding requirement. Special Term expressly declined to reach the constitutional issue. The order appealed from declares the provisions for bonds to be null and void and directed defendant town to return all sums collected as security deposits under the ordinance.

Before considering the provisions of section 268 of the Town Law, we note that both parties agree that the power to enact zoning or other land use regulations and to enforce those regulations must be delegated by the Legislature to the municipality. As creatures of the State, towns are possessed of no inherent police power to zone—"The exercise of that power, to the extent that it is lawful, must be founded upon a legislative delegation to so proceed, and in the absence of such a grant will be held *ultra vires* and void" *(Matter of Golden v Planning Bd. of Town of Ramapo*, 30 NY2d 359, 370). Power has been delegated to towns to enact regulations concerning the use of land for industrial purposes (Town Law, § 261). Further, article 16 of the Town Law contains language relative to the power to enforce duly enacted zoning regulations. Although section 264 of the

Town Law provides that the town board shall provide for the manner in which such regulations shall be enforced, there is no language in article 16 expressly delegating to the town the power to require a compliance bond.

However, section 268 of the Town Law expressly delegates to towns the power to enforce article 16 and regulations enacted pursuant thereto. Subdivision 1 of section 268 provides that a violation of any zoning regulation is an offense punishable by fine or imprisonment. While subdivision 2 is directed primarily to the power to seek injunctions to enforce zoning regulations, it goes on to provide: "In case any * * * land is used * * * in violation of this article or of any ordinance or other regulation made under authority conferred thereby, the proper local authorities of the town, *in addition to other remedies*, may [seek injunctions]" (emphasis supplied).

Defendant argues that—if reasonably related to a legitimate purpose—the power to demand a compliance bond may be implied from this language in subdivision 2 of section 268 of the Town Law authorizing town authorities to seek injunctive relief "in addition to other remedies". Plaintiff argues that the requirement of a bond is burdensome and that in those cases where the Legislature intended a municipality to have such authority, it expressly provided for it (see, e.g., Town Law, § 277).

The language of section 268 is essentially identical to section 7-714 of the Village Law which was taken unchanged from the old Village Law (Village Law of 1909, § 179-c, added L 1923, ch 564). No relevant case law has developed under either the Town or the Village Law. Legislative history is scant. The original delegation of enforcement power to the towns provided only for criminal sanctions and civil penalties without authority to obtain injunctions or other remedies (Town Law of 1909, § 349-v, as added by L 1926, ch 714). In 1931 section 349-v was amended to include a provision that a town could bring an action for injunctive relief in addition to the civil and criminal penalties authorized (L 1931, ch 235). In 1932 the Legislature recodified the entire Town Law. The criminal sanctions and the injunctive relief provisions of section

349-v were carried over to the new section 268, but the provision for civil penalties was dropped. This legislation contained language identical to that which was already part of the Village Law, that the town authorities could seek injunctions in addition to other remedies. The available legislative history does not reveal what the Legislature intended by the language referring to other remedies (NY Legis Doc, 1932, No. 91, Report of the Joint Legislative Committee to Recodify the Town Law, p 35).

It would appear that when the Legislature made changes in the Village Law in 1923 and in the Town Law in 1932, it was following the recommendations of the United States Department of Commerce's Advisory Committee on Zoning which in 1921 issued "A Standard State Zoning Enabling Act". Section 8 of the model act on enforcement and remedies contains language virtually identical to section 268 of the Town Law, including the reference to "other remedies". Professor Anderson notes that the model act was adopted by at least 35 States, and indicates that the draftsmen intended to delegate to local government broad enforcement power "intended to provide municipalities with a variety of remedies to be used to meet a broad spectrum of enforcement problems" (4 Anderson, American Law of Zoning [2d ed], § 27.02, p 314). In 1926 the Advisory Committee on Zoning issued a revised edition including explanatory notes. The explanatory note following section 8 does not indicate that the draftsmen contemplated delegating the power to require compliance bonds.* Nevertheless, it is clear that since the draftsmen believed that language referring to "any appropriate action or proceedings" included all the remedies expressly provided for, the language

---

* "'Any appropriate action or proceedings': Under the provisions of this section the local authorities may use any or all of the following methods in trying to bring about compliance with the law: They may sue the responsible person for a penalty in a civil suit; they may arrest the offender and put him in jail; they may stop the work in the case of a new building and prevent its going on; they may prevent the occupancy of a building and keep it vacant until such time as the conditions complained of are remedied; they can evict the occupants of a building when the conditions are contrary to law and prevent its reoccupancy until the conditions have been cured. All of these things the local authorities should be given power to do if zoning laws are to be effective." (Advisory Committee on Zoning, A Standard State Zoning Enabling Act [rev ed 1926], p 12, n 46.)

"in addition to other remedies", if not redundant, must be construed as an implied delegation of power to utilize other reasonable means of enforcement.

The Standard State Zoning Enabling Act is thus obviously part of the legislative history underlying the enactment of article 16 of the Town Law. While we recognize that zoning provisions are in derogation of the common law and must be strictly construed *(Matter of Allen v Adami*, 39 NY2d 275, 277; *Matter of 440 East 102nd St. Corp. v Murdock*, 285 NY 298, 304), the town board may validly exercise police power when it has expressly or impliedly received a delegation of power from the State *(Matter of Bon-Air Estates v Building Inspector of Town of Ramapo*, 31 AD2d 502). The only reasonable construction of section 268, in light of the legislative history available, is that the draftsmen of the model act and subsequently the Legislature impliedly delegated to towns the power to adopt other reasonable means of enforcing zoning regulations. Critical to our determination and the foundation upon which it is based is the key requirement that whenever a town board acts, it is subject to the constraint that the regulation it adopts must be *reasonably* related to a legitimate purpose.

We find no case law to support plaintiff's contention that whatever other remedies may be implied, compliance bonds are so burdensome that authority to impose them must be express and cannot be implied. However, inasmuch as section 268 does provide expressly for injunctive relief, it is incumbent on the town to establish that such relief is ineffective and that a legitimate need exists to resort to an implied power to demand a bond. In this case injunctive relief may be totally ineffective. The purpose of the zoning regulation is to require drillers to restore the appearance of the land *after* drilling has been completed. If the well is dry and the driller bankrupt or departed, an injunction will be of little value. Given the speculative nature of drilling operations and the potential difficulty of securing compliance with the regulation after the fact, it is apparent that a requirement of a compliance bond may be the only effective way of enforcing this regulation. Under

the circumstances we conclude that the Legislature has impliedly delegated to the town the power to require a compliance bond as a means of enforcing its zoning regulation.

Finally, we consider plaintiff's argument that it was denied equal protection of the laws under the Federal and State Constitutions. Although Special Term did not reach or consider this issue, plaintiff contends that since there is no conceivable state of facts which would justify such discrimination, we should decide this constitutional issue in its favor. The ordinance states: "No bond shall be required of any person desiring to drill on his own land solely for the purpose of obtaining gas for his own use, or the use of his tenants" (Town of Westfield Zoning Ordinance, art II, § 2-02, subd 6, par [A]). The avowed purpose of the regulation was to preserve the aesthetic quality of the town. As plaintiff argues, it is inconceivable that wells drilled by landowners will disturb the environment less than wells drilled by commercial developers. There remains a possibility, however, that the town can demonstrate, if afforded the opportunity, that an injunction would be effective as against landowners and, therefore, that for them a bond is unnecessary. The facts may also demonstrate that a commercial operation may cause greater harm to the environment. The town need only demonstrate that there is a rational basis for the classification which is fairly related to the objectives of the ordinance *(Matter of Abrams v Bronstein,* 33 NY2d 488). Insofar as injunctive relief may be effective as against landowners, but ineffective as against commercial developers which lease drilling rights, the classification may be valid. It cannot be determined on the basis of the record whether the ordinance unlawfully discriminates between landowners drilling for their own private use and commercial gas companies. The town should have an opportunity to develop the facts relevant to this equal protection issue.

Accordingly, the order should be reversed, the motion denied and the matter should be remitted for further proceedings in accordance with this opinion.

CALLAHAN, DOERR, DENMAN and MOULE, JJ., concur.

Order unanimously reversed, without costs, motion denied and matter remitted to Supreme Court, Chautauqua County for further proceedings in accordance with opinion by CARDAMONE, J. P.