CARDER REALTY CORPORATION, Appellant, *v.* THE STATE OF NEW YORK, Respondent.*

(Claim No. 23994.)

Third Department, October 31, 1940.

*Ainsworth & Sullivan* [*Charles B. Sullivan* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Harold Greenstein* and *Leon M. Layden, Assistant Attorneys-General,* of counsel], for the respondent.

CRAPSER, J. The claimant entered into a contract with the State of New York on the 17th day of December, 1931, for the construction of some seven buildings and connecting tunnels at the Hudson River State Hospital at Poughkeepsie, N. Y. The claimant entered into the performance of the work to be done thereunder and while engaged in the performance of the work received from the State fifteen payments on account of the contract price. The claim is to recover on *quantum meruit* for work performed by the claimant in partially completing the work under the contract.

The Legislature in 1932 enacted sections 220-a, 220-b and 220-c of the Labor Law by chapter 472 of the Laws of 1932, which became effective on July 1, 1932. Prior to the taking effect of these amendments to the Labor Law the claimant had earned and had been paid monthly Estimates 1 to 5, inclusive, thereafter claimant was paid Estimates 6 to 14, inclusive, amounting to $606,924.91, without any demand being made for filing wage affidavits under the added provisions of the Labor Law.

On March 29, 1933, the claimant, in accordance with the contract, made written requisition upon the Department of Public Works for the payment of its Estimate No. 15, amounting to $32,700, which was certified for payment by the chief engineer on April 17, 1933, and which was paid on April 25, 1933. In connection with this estimate the State officials first asserted that claimant had to file wage affidavits under sections 220-a and 220-b of the Labor Law. At this time proceedings before the Industrial Commissioner under section 220 of the Labor Law to determine the rate

of wages for bricklayers who had been employed by the claimant and had completed their work was still pending without final determination. (*Matter of Carder Realty Corp.* v. *Perkins*, 261 N. Y. 634 [March 14, 1933]; amended remittitur, Id. 713 [April 25, 1933].)

On April 10, 1933, the Comptroller wrote the claimant: " This office will withhold from your certificate an amount sufficient to cover the claims in question. Will you kindly forward us an affidavit executed under the provisions of Section 220-b of the Labor Law certifying the maximum amount that may become due these laborers."

The claimant on April 13, 1933, replied, pointing out that claimant's contract was entered into before sections 220-a and 220-b were enacted and claiming that those amendments did not apply to claimant's contract and calling attention to the fact that the Court of Appeals had not adjudged an amount to be due any laborers in the prevailing rate of wage proceedings, and demanded payment of the estimate.

On April twentieth the claimant again made written demand for the payment of its estimate and gave notice that unless the estimate was paid immediately it would be deemed a breach. The State then paid Estimate No. 15 on April twenty-fifth.

After the enactment of chapter 472 of the Laws of 1932, but before the same took effect, and on June 23, 1932, the Attorney-General rendered an opinion to the Department of Public Works advising that chapter 472 of the Laws of 1932 " does not affect existing contracts. To apply it to such would be to add a burden or condition to the contract not in the contemplation of the parties at the time of its execution." (45 State Dept. Rep. 243.) It was in accordance with this opinion that claimant's Estimates Nos. 6 to 14, inclusive, aggregating $606,924.91, were paid by the Comptroller on certificate of the chief engineer made in accordance with the contract's provisions.

The court has found in regard to Estimate No. 16 which brought about the breach of the contract as follows:

" 13. That on or about April 25, 1933, claimant, in accordance with the terms and provisions of its said contract, made written application to the State of New York for payment upon said contract of Progress Estimate No. 16, in the sum of $24,650 for materials and labor furnished by it in connection with said construction for which no payment had been made, and which had been furnished and incorporated in the work since the date of the last preceding monthly certificate for payment upon said contract, which said application was thereafter and on May 4, 1933, duly approved and certified by the Chief Engineer to the Comptroller for payment as provided in said contract.

"14. That upon May 5, 1933, the State of New York, acting through the Comptroller and the Chief Engineer, demanded that claimant file sworn certificates executed by claimant and by each of its respective subcontractors showing amounts due for wages, pursuant to the provisions of Sections 220-a and 220-b of the Labor Law (Chapter 472, Laws of 1932), and notified claimant that its said Estimate No. 16 would not be advanced for payment until such certificates were filed.

"15. That on May 5, 1933, claimant made written demand upon the Comptroller of the State of New York for the immediate payment of Estimate No. 16, for its account, to its assignee, The Carleton Company, Inc., and gave notice that claimant would deem that the State of New York had breached its said contract if it continued to refuse to pay said estimate.

"16. That on May 5, 1933, The Carleton Company, Inc., assignee as aforesaid, made written demand upon the State of New York for immediate payment of Estimate No. 16.

"17. That the State of New York failed and refused to pay to claimant or its assignee, The Carleton Company, Inc., the aforesaid Estimate No. 16, and by reason of such failure claimant on May 9, 1933, notified the State of New York that it deemed and declared its said contract breached by the State of New York for refusal to pay said estimate, and that it would proceed no further with the work and would hold the State of New York liable on account of such breach. Thereupon and on May 9, 1933, claimant withdrew from the site of the work."

On May 5, 1933, when claimant requested the Department of Audit and Control for immediate payment of Estimate No. 16 it was notified that the estimate would not be paid until claimant filed statements pursuant to sections 220-a and 220-b of the Labor Law, showing the amount due for wages.

On May 5, 1933, the Comptroller wrote the claimant as follows:

"Under date of May 3, 1933, the Hon. John J. Bennett, Jr., Attorney-General of the State of New York, rendered an opinion to this office, in relation to the application of Chapter 472 of the Laws of 1932, with regard to Sections 220-A and B of the Labor Law, requiring all contractors and subcontractors to file statements of unpaid wages.

"Following herewith is quoted from the Attorney-General's opinion:

"'It is, therefore my opinion that you should require all contractors or subcontractors engaged in public improvements under existing contracts to file the statement of unpaid wages as provided for in section 220-a of the Labor Law, both as to contracts entered into prior to and after July 1st, 1932.'

" In accordance with the above, you are hereby requested to furnish this office with the necessary certificate regarding unpaid wages to be attached to your estimate No. 16 in the amount of $24,650.00 which will not be advanced for payment until the necessary affidavit is received. Forms for such purpose are provided by the State Department of Public Works.

" Your early attention to this matter would expedite the payment of the estimate referred to."

On May fifth the chief engineer wrote the claimant:

" In accordance with a recent ruling by the Attorney-General, the Labor Law which went into effect July 1, 1932, now becomes retroactive and applies to all contracts now in force.

" We are therefore sending you the necessary blanks and ask that you sign duplicate affidavits for yourself and also secure duplicate affidavits for each of your subcontractors, upon whose work a request for payment is being made in your application dated April 25, 1933, Contract No. 1602, at Hudson River State Hospital.

" Please submit the signed affidavits to our local inspector for allocation, and who will then forward them to this office to be attached to your request for payment as required by law.

" Until such affidavits are received your application for payment is being held up."

On May fifth claimant made written demand for immediate payment of his Estimate No. 16 which had been certified to the Comptroller on May fourth, and which claimant notified the State then became due and payable immediately " under the terms of the contract."

Claimant's letter stated:

" Upon our request made today, through our attorney, to the Department of Audit and Control for the immediate payment of this estimate, we were informed that the estimate would not be paid until the Carder Realty Corporation filed statements, pursuant to Sections 220-a and 220-b of the Labor Law, showing amounts due for wages.

" Under date of April 13, 1933, when our previous estimate was being withheld on the same grounds, you were advised, through our attorney, that the above entitled contract was entered into between Carder Realty Corporation and the State of New York on December 17, 1931, more than six months prior to the date when the above amendments to the Labor Law became effective. Your attention is again called to the fact that the above amendments do not apply to or affect this contract.

" You are hereby notified that unless the aforesaid estimate is paid immediately to The Carleton Co., Inc., to whom said estimate has been duly assigned by Carder Realty Corporation, pursuant to assignment duly filed with your Department, the Carder Realty Corporation shall deem that the State of New York has breached its contract by failure to pay the aforesaid estimate according to the terms of said contract, and will not proceed further with the work and will hold the State of New York liable on account of such breach."

The construction work had been continued by the claimant during the controversy and was eighty-three per cent completed on May ninth when it withdrew from the work upon the State's refusal to pay the estimate.

Article 6 of the specifications made part of claimant's contract contained the provision:

" 26.  Before any part of the contract shall be sublet, the contractor shall submit to the Chief Engineer in writing the name of the proposed subcontractor and obtain his written consent to such subcontractor.  Contractor shall furnish the Chief Engineer with full information concerning proposed subcontractor's ability and qualifications when requested."

The court found:

" 18.  That prior to the enactment of Chapter 472, Laws of 1932, claimant had entered into written contracts with eighteen subcontractors, who had been approved as claimant's subcontractors by the State of New York in accordance with the provisions of claimant's contract, and upon May 5, 1933, all of said subcontractors, except the excavating sub-contractor and the subcontractor for the foundations, were engaged in the contract work and employing labor thereon."

These subcontracts contained no provisions obligating the subcontractors to furnish to claimant their affidavits or certificates or wage statements in any form showing the amounts, if any, due from such subcontractor to its own laborers on the contract.

Sections 220-a, 220-b and 220-c of the Labor Law, which are the cause of this controversy, were enacted by chapter 472 of the Laws of 1932 and became effective July 1, 1932, and provided as follows:

" § 220-a.  Statements showing amounts due for wages to be filed — Verification.  Before payment is made by or on behalf of the State or of any city, county, town, village or other civil division of the State of any sum or sums due on account of a contract for a public improvement it shall be the duty of the Comptroller of the State or the financial officer of the municipal corporation or other

officer or person charged with the custody and disbursement of the State or corporate funds applicable to the contract under and pursuant to which payment is made to require the contractor and each and every subcontractor from the contractor of [or] a subcontractor to file a statement in writing in form satisfactory to such officer certifying to the amounts then due and owing from such contractor or subcontractor filing such statement to any and all laborers for daily or weekly wages on account of labor performed upon the work under the contract, setting forth therein the names of the persons whose wages are unpaid and the amount due to each respectively, which statement so to be filed shall be verified by the oath of the contractor or subcontractor as the case may be that he has read such statement subscribed by him and knows the contents thereof, and that the same is true of his own knowledge.

" § 220-b. Amounts due for wages may be withheld for benefit of laborers. In case any interested person shall have previously filed a protest in writing objecting to the payment to any contractor or subcontractor to the extent of the amount or amounts due or to become due to him for daily or weekly wages for labor performed on the public improvement for which such contract was entered into, or if for any other reason it may be deemed advisable, the Comptroller of the State or the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the State or corporate funds applicable to the contract for such public improvement may deduct from the whole amount of any payment on account thereof the sum or sums admitted by any contractor or subcontractor in such statement or statements so filed to be due and owing by him on account of labor performed on such public improvement before making payment of the amount certified for payment in any estimate or voucher, and may withhold the amount so deducted for the benefit of the laborers for daily or weekly wages whose wages are unpaid as shown by the verified statements filed by any contractor or subcontractor, and may pay directly to any person the amount or amounts shown to be due to him for such wages by the statements filed as hereinbefore required, thereby discharging the obligation of the contractor or subcontractor to the person receiving such payment to the extent of the amount thereof.

" § 220-c. Contractor or subcontractor verifying false statement guilty of perjury. Any contractor or subcontractor who shall upon his oath verify any statement required to be filed under this act which is known by him to be false shall be guilty of perjury and punishable as provided by section one thousand six hundred and thirty-three of the Penal Law."

The general rule is that statutes are to be construed as prospective only and that it takes a clear expression of the legislative purpose to justify a retroactive application. Changes of procedure, *i. e.*, of the form of remedies, are said to constitute an exception, but that exception does not reach a case where before the statute there was no remedy whatever.

In determining whether a retroactive operation of a statute was intended by the Legislature it is always legitimate to show that one construction would lead to hardships which another would avoid. (*Jacobus* v. *Colgate*, 217 N. Y. 235; *Union Pacific R. R. Co.* v. *Laramie Stock Yards Co.*, 231 U. S. 190, 199.)

There is no language in chapter 472 of the Laws of 1932 which indicates any purpose on the part of the Legislature to adopt retroactive legislation and in the absence of any language manifesting an intent that the statute shall have retroactive operation, it is well settled that the statute must be construed to have prospective effect only.

" ' No State shall * * * pass any * * * law impairing the obligation of contracts.' (U. S. Const. art. I, § 10.) 'A contract is * * * an agreement in which a party undertakes to do, or not to do, a particular thing.' (*Ogden* v. *Saunders*, 12 Wheat. [U. S.] 213, 316, 317.) By the obligation of a contract is meant the legal obligation of the parties to adhere to the agreement which at the time of contracting the law recognized and made enforceable. (*Ogden* v. *Saunders*, *supra*.) " (*Preston Co.* v. *Funkhouser*, 261 N. Y. 143.)

The obligation of a contract is impaired where a statute alters its terms by imposing new conditions or which adds new duties. (*Northern Pacific R. Co.* v. *Duluth*, 208 U. S. 583; *Green* v. *Biddle*, 8 Wheat. 1; *West River Bridge Co.* v. *Dix*, 6 How. [U. S.] 507; *Murray* v. *Charleston*, 96 U. S. 432; *Barnitz* v. *Beverly*, 163 id. 118.)

" The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority, be done." (*Stuart* v. *Palmer*, 74 N. Y. 183, 188; *Matter of Richardson*, 247 id. 401, 420, 421; *Rosalsky* v. *State of New York*, 254 id. 117, 121.)

If chapter 472 of the Laws of 1932 could be applied retroactively to this contract it would result in taking moneys earned by the general contractor to be used by the Comptroller to pay employees of subcontractors even though no moneys were due or to become due from the general contractor to the subcontractor; that is the moneys of the contractor could be taken to pay the employees of a subcontractor without regard to whether any moneys were due

from the general contractor to the subcontractor or without any hearing upon the matter and such an interpretation deprives the plaintiff of its property without due process of law.

Judge LEHMAN, writing in the case of *Devitt* v. *Schottin* (274 N. Y. 188) says: " The statute contains no language which indicates a legislative intent to impose upon a contractor any obligation to pay wages due from a subcontractor where no such obligation existed before.  *  *  *  Analysis of the statute seems to demonstrate almost beyond possibility of dispute that the Legislature intended to grant a permissive power to be exercised in such cases. *  *  *  The assumption of the Legislature that even without the new sections a contractor upon a public improvement is ordinarily under an obligation to see that laborers employed upon the work even by subcontractors are paid was shared by the Attorney-General (Opinion of Attorney-General [1933], p. 321).  Upon what is that assumption based?  Since such obligation is not imposed by any statute it can rest only upon a general practice of the State to require a contractor for the construction of a public improvement to provide in the contract that he will see that all laborers performing work upon the improvement for daily or weekly wages will be paid."

There is nothing in the record in this case to indicate that at the time this contract was entered into it was the custom of the State to require such provisions in the contracts it made.  The contractor is only bound by the terms of his contract and the amendments to the Labor Law were not a part of that contract because they were not enacted until several months after the date of the contract.

As stated by the Attorney-General in his opinion, to apply the amendments of the Labor Law to an existing contract " would be to add a burden or condition to the contract not in the contemplation of the parties at the time of its execution."  (45 State Dept. Rep. 243.)

Neither the contract nor any statutory provision existing when the State entered into its contract with the claimant obligated the claimant to file with the Comptroller any wage affidavits executed either by itself or by any of its subcontractors.  When the State is one of the contracting parties it has no greater right or power in prescribing how the contractor shall conduct himself in reference to obligations imposed upon him by the laws of the State, than would a private owner under a contract containing like provisions. Where the State has let out the performance of work to a contractor it cannot prescribe how the contractor shall discharge his obligations to third parties unless it is reserved by the contract.  The State in

this respect stands the same as citizens, its rights are just as great as those of private citizens and no greater. (*People* v. *Orange County Road Construction Co.*, 175 N. Y. 84, 90.)

Sections 220-a and 220-b of the Labor Law imposed no burdens or obligations upon the contractor that were not contained in his contract and it was beyond the power of the State to so impose said obligations. To impose the obligations of these sections upon a contract already existing would be to impair the obligations of that contract contrary to the provisions of section 10 of article 1 of the United States Constitution. (*National City Bank* v. *Gelfert*, 284 N. Y. 13.)

It was stipulated upon the record that from April 13 to May 11, 1933, the lien docket was clear of liens affecting this contract.

The court has found that the reasonable value of the materials furnished, labor performed, and services rendered by claimant in and about the performance of said contract down to the 9th of May, 1933, was the sum of $1,131,998.97 and the payments on account thereof amounted to $849,284.83, leaving a balance due the claimant of $282,714.14.

The court disapproves of findings Nos. 19, 20, 21 and 22 and conclusions of law Nos. 1, 2, 4, 5, 6, 7 and 8 contained in the decision.

This court approves and finds claimant's requests to find Nos. 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 32 and the conclusions of law Nos. First, Second, Third, Fourth and Fifth, contained in claimant's requests to find.

The judgment herein is reversed on the law and the facts and an award and judgment are hereby ordered in the claimant's favor and against the State of New York in the amount of $282,714.14, with interest thereon from May 9, 1933, together with the costs of this appeal.

HILL, P. J., HEFFERNAN and FOSTER, JJ., concur; BLISS, J., dissents, with an opinion.

BLISS, J. (dissenting). In *Devitt* v. *Schottin* (274 N. Y. 188) Judge LEHMAN said of sections 220-a and 220-b of the Labor Law:

"There is no reason to believe that the Legislature intended to impose upon a contractor any obligation to pay wages to laborers of a subcontractor where such obligation did not previously exist. Doubtless it assumed that in many cases such obligation did exist and that in many cases exercise of the authority conferred upon the Comptroller would prove of practical benefit to honest contractors as well as laborers. Analysis of the statute seems to demonstrate almost beyond possibility of dispute that the Legis-

lature intended to grant a permissive power to be exercised in such cases. It appears that the statute was drafted in the office of the corporation counsel of the city of New York, and the explanatory memorandum filed with the bill by the corporation counsel shows that this was the intention at least of the draftsman.

" The assumption of the Legislature that even without the new sections a contractor upon a public improvement is ordinarily under an obligation to see that laborers employed upon the work even by subcontractors are paid was shared by the Attorney-General. (Opinion of Attorney-General [1933], p. 321.) Upon what is that assumption based? Since such obligation is not imposed by any statute, it can rest only upon a general practice of the State to require a contractor for the construction of a public improvement to provide in the contract that he will see that all laborers performing work upon the improvement for daily or weekly wages will be paid.

" The record does not inform us whether in 1932, when these sections were enacted, it was the custom of the State to require such provisions in the contracts it made. The contract made thereafter in this case is part of the record. It expressly makes sections 220-a and 220-b part of the contract, and provides that the contractor ' must keep full control of the subcontractors and be responsible for them.' Under a fair construction of the contract, it appears plain that the parties to the contract intended that the responsibility of the contractor for his subcontractors would extend to the payment of wages, and, where the subcontractor failed to pay them, payment would be enforceable in manner authorized by sections 220-a and 220-b. We need not consider whether the statute has application in cases where the contract with the State imposes no responsibility upon the contractor for wages due from a subcontractor, if such contracts there be."

From this opinion it is apparent that sections 220-a and 220-b of the Labor Law impose no new or further obligation upon a contractor and merely provide a method for laborers to obtain their wages from the funds payable by the State under a public contract in those cases in which an obligation already existed on the part of the contractor to pay these wages. The statute sets up a method of procedure and is remedial only. In discussing the circumstances which led the Legislature to believe that such obligation did exist in many cases, Judge LEHMAN calls attention to the provision in the Schottin contract that the contractor " must keep full control of the subcontractors and be responsible for them," as well as to the fact that the contract expressly made sections 220-a and 220-b part of the contract. He then states that under

a fair construction of the contract it appears plain that the parties intended that the responsibility of the contractor for his subcontractors would extend to the payment of wages where the subcontractor failed to pay them and the payment would be enforceable in the manner authorized by sections 220-a and 220-b.

We find in the case now before us the same identical contractual provision, namely, that the contractor " must keep full control of all subcontractors and be responsible for them." In addition, the contract also says that the contractor shall provide and pay for all labor employed in the execution of the work of his contract. These terms in the contract clearly impose upon the contractor the obligation which the Legislature assumed to ordinarily exist. Consequently sections 220-a and 220-b of the Labor Law, which merely provide a method for the enforcement of such obligation, were clearly applicable to this particular contract and the State was fully justified in asking this contractor to furnish the affidavits mentioned in these sections. A demand for those affidavits as a condition precedent to the making of further payments under the contract was not only within the rights of the State, but required by the statute.

The judgment of the Court of Claims should be affirmed.

Judgment reversed on the law and facts and an award and judgment ordered in claimant's favor and against the State of New York in the sum of $282,714.14, with interest thereon from May 9, 1933, together with costs.

Findings reversed and new findings made in accordance with opinion.