In the Matter of BON-AIR ESTATES, INC., Respondent, *v.* BUILDING INSPECTOR OF THE TOWN OF RAMAPO, Appellant.

Second Department, April 7, 1969.

*Robert H. Freilich* (*Bernard E. Stanger* of counsel), for appellant.

*David Coral* and *Reuben Ortenberg* for respondent.

R ABIN, J.  The basic problem presented on this appeal is whether the Town of Ramapo had authority to enact the local legislation struck down by the Special Term (Local Laws, 1967, Nos. 4 and 5 of the Town of Ramapo), which legislation imposed upon builders of one- and two-family homes in Ramapo the obligations of (1) holding in escrow, until transfer of title to the purchaser, the contract down payment received on the sale of any such premises and (2) depositing cash or an undertaking in the amount of $1,000 upon applying for a certificate of occupancy, to insure good workmanship and compliance with the applicable building codes and local regulations.

In an earlier and kindred case, involving the same local legislation, this court did not pass upon the constitutionality thereof.  It was merely held that the granting of an injunction *pendente lite,* restraining the enforcement of this legislation, was warranted upon the filing of a suitable undertaking (*Rockland County Bldrs. Assn.* v. *McAlevey,* 29 A D 2d 975).

At bar, the parties have principally addressed themselves to the constitutionality of the municipal legislation, with petitioner seeking a CPLR article 78 review of the validity thereof by direct attack.  While an article 78 proceeding is not available to review the propriety or wisdom of a legislative act, such proceeding is a proper vehicle to challenge the constitutional power of a local legislative body to enact municipal legislation on subject matters unauthorized by the common law, the Constitutions of the State and the Nation, or the statutes (see *Matter of Policemen's Benevolent Assn. of Westchester County* v. *Board of Trustees of Vil. of Croton-on-Hudson,* 21 A D 2d 693, 695, and cases there cited).

In our opinion, the argument that the local laws here assailed were sanctioned by the general police powers vested in the Town of Ramapo under common-law doctrine is without merit.  The residual police power reposes in the State, not in any of its political subdivisions; and a municipality can only exercise police power when it has specifically or impliedly received a delegation of such power from the State (*Wells* v. *Town of Salina,* 119 N. Y. 280, 287; *Incorporated Vil. of Brookville* v. *Paulgene Realty Corp.,* 24 Misc 2d 790, 793, affd. 14 A D 2d 575, affd. 11 N Y 2d 672; *William Mullare, Inc.* v. *Town of Hempstead,* 11 Misc 2d 245, 246).  At bar, these local laws are not validated by any express or implied grant of general police power to the municipality.

Apart from the lack of general police power as a validating source, it is our further opinion that the State Constitution and

pertinent statutes do not in any event authorize the local laws here involved. Subdivision 15 of section 130 of the Town Law authorizes local legislation: " Promoting the health, safety, morals or general welfare of the community, including the protection and preservation of the property of the town and of its inhabitants, and of peace and good order, the benefit of trade and all other matter related thereto, insofar as the same shall not be inconsistent with existing law." New article IX of the State Constitution establishes a bill of rights for local governments (§ 1) and authorizes the Legislature to grant to municipalities the authority to legislate with respect to: " The government, protection, order, conduct, safety, health and well-being of persons or property therein " (§ 2, subd. [c], par. [10]).

In pursuance of this constitutional addition, effective on January 1, 1964, the Legislature adopted the Municipal Home Rule Law, effective the same date (L. 1963, ch. 843). Subdivision 1 of section 10 thereof provides that each town may adopt local laws, not inconsistent with the Constitution or general laws, relating to certain matters, including the following (in par. [ii], subpar. a, cl. [11]): " The government, protection, order, conduct, safety, health and well-being of persons or property therein. This provision shall include but not be limited to the power to adopt local laws providing for the regulation or licensing of occupations or businesses ".

It is argued that the learned Special Term was in error in holding that the town had no power to enact these Local Laws Nos. 4 and 5, since they were specifically authorized by both article IX of the State Constitution and section 10 of the Municipal Home Rule Law. In part proof of this last assertion, it is pointed out that the Governor's veto message on 1966 Assembly bill, Introductory No. 4985, Print No. 6309, suggests, by reference to an expression of opinion by the Office for Local Government, that the police power delegated to towns is sufficient to authorize the adoption of local laws to require the posting of payment and performance bonds by builders. We note that the constitutionality of the bill vetoed was not discussed.

We are of the opinion that the specific legislation here under consideration, namely, Local Law No. 4 as enacted and as superseded by Local Law No. 5, is unconstitutional and invalid on its face. It is in excess of any delegated power reposed in a town by the cited sections of the Constitution, the Town Law and the Municipal Home Rule Law. That portion of this local law which purports to indemnify purchasers from builders of one- and two-family houses against damage from improper construction by the escrow deposit of the contract down payment and the post-

ing of cash or a bond with the applictaion for a certificate of occupancy is unconstitutional, as an unnecessary infringement on the right of contract between individuals. These provisions are also discriminatory, in that they are restricted to builders of one-and two-family homes on land held primarily for resale, while exempting from their operation other builders, either of multiple dwellings or commercial properties, who ostensibly require no further supervision and who may build free of the requirements to deposit down payments or to post maintenance security upon application for building permits or certificates of occupancy.

Whatever may be the power of a municipality to regulate a particular business, occupation or trade, it does not include the power to abolish a lawful trade (62 C. J. S., Municipal Corporations, § 237, p. 598). Where the business, if honestly and properly conducted, inflicts no public injury, the conduct of a few " is no justification for a law which prohibits an honest man from conducting the business in such a manner as not to inflict injury upon the public " (*Tolliver* v. *Blizzard*, 143 Ky. 773, 776). Where the business is lawful, its lawful operation may not be curtailed on the part of all of its practitioners because some few transact business in a manner " which creates conditions which the public should not be compelled to tolerate " (*Good Humor Corp.* v. *City of New York*, 290 N. Y. 312, 319). The regulatory municipality must devise legislation which will heighten enforcement of lawful requirements and restrict the activities of the wrongdoer alone, unless it be impractical to draw a line separating the malefactor from the honest merchant (*Good Humor Corp.* v. *City of New York, supra*, p. 321).

Where the purported purpose of municipal legislation is to regulate a lawful activity, but its real purpose is " to prohibit by onerous and exasperating restrictions, under the guise of regulation " (*People ex rel. Phillips* v. *Raynes*, 136 App. Div. 417, 423, affd. 198 N. Y. 539), the ordinance will be deemed unconstitutional and invalid (*Trio Distr. Corp.* v. *City of Albany*, 2 N Y 2d 690, 693). " When regulation becomes destruction, it ceases to be regulation " (*Eighth Ave. Coach Corp.* v. *City of New York*, 286 N. Y. 84, 94). The police power may not be invoked to sustain an unauthorized invasion of the citizen's rights and privileges (*Bowen* v. *City of Schenectady*, 136 Misc. 307, 310).

At bar, it seems to us that the town has started with the premise, omitted from the legislation itself but constituting its true motivating force, that some builders of one- and two-family homes are jerry-builders who too often disappear, liability-wise,

when buyers discover faults in the homes purchased. Thus, Local Laws Nos. 4 and 5 suffer from the common vice that they begin with the conviction that, since some builders prove bad risks in litigation brought by disappointed buyers of one- and two-family homes, all engaged in the calling are equally to be rigorously regulated in their pursuit of a lawful calling. There are not present in this case any statistics or findings indicating that the experience of the town's new residents in dealing with faulty builders amounts to a public emergency of some kind. Likewise absent is any explanation of why enforcement of the New York State Building Construction Code (Executive Law, art. 18, §§ 370–387), which the town has adopted, has failed to keep the few errant builders up to the required mark of good building practice. Moreover, the town fails to indicate how — having adopted that code — it may deviate therefrom contrary to the following provision of the enabling law (Executive Law, § 386) : " no municipality in which the state building construction code has been accepted and is applicable shall have the power to supersede, void, or repeal or make more restrictive any of the provisions of this article ".

In sum, it seems to us that, contrary to the strictures contained in the *Good Humor* case (*supra*), the town has failed to make or support a legislative finding " that discrimination between the useful and the harmful is impractical " (*Good Humor Corp.* v. *City of New York*, 290 N. Y. 312, 321, *supra*). In view of the rule that a municipality's power to regulate business must be exercised reasonably within constitutional limitations " not arbitrarily or in restraint of trade, without discrimination, and fairly to all alike " (62 C. J. S., Municipal Corporations, § 235, p. 594), it is our opinion that the local laws here assailed fail largely because they were drawn without inherent demonstration of the facts tending to support their reasonableness (62 C. J. S., Municipal Corporations, § 235, p. 595).

Accordingly we hold that these Local Laws Nos. 4 and 5 lack proper foundation by virtue of constitutional and statutory provisions. In addition, by the subject legislation, the town appears to be attempting to change the terms of the conventional sales agreements between the regulated builders and their buyers in the respects that the down payments are to be held in escrow and that $1,000 is to be deposited with the application for a certificate of occupancy. The legislation is therefore also unconstitutional because it impairs the obligation of private contracts, contrary to the Federal Constitution, and to that exent impermissibly impinges upon private property (*Matter of Wa-Wa-*

*Yanda* v. *Dickerson,* 18 A D 2d 251, 255). Legislation which adds new terms and conditions to existing contracts impairs the obligation of such contracts (*Carder Realty Corp.* v. *State of New York,* 260 App. Div. 459, 466, affd. 285 N. Y. 803).

In view of the foregoing, we are of the opinion that the judgment should be affirmed, with $10 costs and disbursements.

CHRIST, Acting P. J., BRENNAN, MUNDER and MARTUSCELLO, JJ., concur.

Judgment affirmed with $10 costs and disbursements.