■ SAUL LERNER et al., Appellants, v C. ALBERT JOHNSON et al., Respondents.—In an action, *inter alia,* to permanently enjoin the defendants from terminating the plaintiffs' lease based upon the failure of the plaintiffs to maintain fire insurance prior to the commencement of this action, the plaintiffs

appeal (1) from an order of the Supreme Court, Suffolk County (Hand, J.), entered March 14, 1989, which denied their motion for summary judgment, and (2) as limited by their brief, from so much of an order of the same court entered August 2, 1989, as, upon reargument, adhered to the original determination.

Ordered that the appeal from the order entered March 14, 1989, is dismissed, without costs or disbursements, as that order was superseded by the order entered August 2, 1989, made upon reargument; and it is further,

Ordered that the order entered August 2, 1989, is reversed insofar as appealed from, on the law, without costs or disbursements, and the plaintiffs' motion is granted to the extent that the defendants are permanently enjoined from terminating the lease based upon the plaintiffs' failure to maintain fire insurance prior to the commencement of this action on the condition that the plaintiffs, on or before a date to be fixed by Supreme Court, Suffolk County, deposit $51,000 in escrow, or in the discretion of Supreme Court, Suffolk County, post an undertaking with a corporate surety in the sum of $51,000, representing the claimed loss to the defendants by virtue of the fire damage to the subject structure; in the event that the condition is not complied with, the order entered August 2, 1989, is affirmed insofar as appealed from, with costs; and it is further,

Ordered that the order entered March 14, 1989, is modified accordingly, and it is further,

Ordered that the matter is remitted to the Supreme Court, Suffolk County, to supervise the placing of the funds in escrow or the posting of the undertaking, as the case may be, and to determine a reasonable time within which the structure is to be replaced or rebuilt with "one of equal or greater value" in accordance with paragraph 9 of article EIGHTH of the lease.

The plaintiffs, the tenants under a 63-year lease on an approximately two-acre parcel of property in Commack, Long Island, commenced this action seeking, *inter alia*, injunctive relief after the defendant landlords informed them that they were canceling the leasehold due to the tenants' failure to maintain fire insurance on the premises. In the summer of 1987 a fire caused damage to the sole structure on the premises, a small service station erected sometime before 1966. The service station was abandoned several years before the fire, following the termination of a subtenancy. Approximately three years before the fire, the tenants began to take steps to develop the premises into a shopping center. Among other

things, they applied to the town for a change in zoning. The necessary zoning changes, which cost the tenants approximately $87,000 to effectuate, were eventually granted by the town, after this action was commenced.

The tenants admit that they neglected to maintain fire insurance on the premises, apparently because they planned to demolish the service station and replace it with either a shopping center, if the town granted the necessary zoning changes, or an office building which was permissible under the current zoning laws.

After learning of the fire, the landlords sent a letter dated September 25, 1987, to the tenants asking them to produce a fire insurance policy and to advise the landlords whether they had informed the insurance company of the loss. The landords also stated that in the event the tenants had no fire insurance coverage in effect, the landlords would have the damage assessed and would bill the tenants. Approximately one month later, when it was evident that there was no fire insurance coverage relating to the loss, the landlords sent another letter informing the tenants that they had elected to cancel the leasehold (which would otherwise have expired in the year 2029). Approximately six months later, the landlords sent an additional letter dated April 14, 1988, which, once again, advised the tenants that the landlords were electing to cancel the lease and take occupancy of the premises. This action ensued.

The lease allows the landlords to terminate the leasehold in the event any covenant or condition in 'he lease is breached. To this end, the lease states that the landlords "may at their option, on not less than five days notice in writing * * * terminate this lease, and this lease and the term thereof shall automatically cease and determine [sic] at the expiration of the said five-day period". Inasmuch as this clause is not triggered by the tenants' conduct but rather by the passage of time which begins to run when the landlords send a termination letter as a result of a default to which the clause applies, it is a conditional limitation (see, TSS-Seedman's, Inc. v Elota Realty Co., 72 NY2d 1024; Perrotta v Western Regional Off-Track Betting Corp., 98 AD2d 1). Accordingly, "without service of a notice specifying the date of expiration of the lease there can be no termination and the lease remains in effect" (TSS-Seedman's, Inc. v Elota Realty Co., supra, at 1027).

Neither of the landlords' letters specified a date of termination. Instead, the letters purported to cancel the leasehold

immediately. Therefore, they were invalid. We decline to view these communications as valid notices of termination, because to do so would violate acceptable canons of landlord and tenant law which require strict construction of language in written instruments that could work a forfeiture *(see, Perrotta v Western Regional Off-Track Betting Corp., supra,* at 6; *see also, Gillette Bros. v Aristocrat Rest.,* 239 NY 87, 92). Thus, inasmuch as the letters failed to specify that the termination would become effective in five days, the letters were invalid as notices of termination, and the lease remains in effect.

The lease contained extensive provisions regarding the maintenance of fire insurance, and accordingly, we decline to view the tenants' failure to comply with such provisions as immaterial. If our analysis stopped here, in the absence of equitable considerations, the landlords could simply terminate the lease by sending a valid termination notice. However, we find that equity should intervene to relieve against this forfeiture of a valuable leasehold interest because the breach is not necessarily prejudicial to the landlords and because it falls under the rubric of cases involving an "honest mistake" or "similar excusable fault" *(see, J.N.A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392, 400; *United Skates v Kaplan,* 96 AD2d 232).

Given that the lease provides for the disposition of fire insurance proceeds in the event the damaged structure was to be rebuilt or replaced with one of equal or greater value and that paragraph 9 of article EIGHTH of the lease indicates that the tenants would receive the insurance proceeds in that event, the landlords, if they are able to terminate the lease, will have been placed in a substantially better position as a result of the tenants' breach. The record demonstrates that the landlords were apprised immediately that the tenants would contest the purported cancellation, and hence, there is no basis to conclude that the landlords made other commitments for the premises, nor do they claim to have done so. Moreover, if the tenants place in escrow a sum of money, or an undertaking, equivalent to the claimed fire damage loss, it would revert to the landlords if a comparable or superior structure is not built within a reasonable period of time. Under these circumstances, the landlords will not have sustained any loss at all. The tenants, however, have made a considerable investment toward improving the property, which will inure to the landlords' benefit. They have also paid rent, taxes, and liability insurance premiums for the premises over the last several years while awaiting zoning approval

from the town, while the property generated no income. As a result, the tenants will undoubtedly face a substantial loss under a forfeiture, the gravity of which "is certainly out of all proportion to the gravity of fault" *(J.N.A. Realty Corp. v Cross Bay Chelsea, supra,* at 399). Accordingly, the tenants, under the facts and circumstances of this case, are entitled to equitable relief.

Therefore, the order of the Supreme Court should be reversed and an injunction granted permanently enjoining the landlords from commencing a proceeding to regain the property for the tenants' failure to effectuate fire insurance coverage prior to the time this action was commenced. The tenants are hereby directed to place in escrow or, in the discretion of the Supreme Court, Suffolk County, to post an undertaking with a corporate surety in the sum of $51,000, representing the claimed loss to the defendants by virtue of the fire damage to the subject structure, in order to reimburse the landlords in the event the structure is not replaced or rebuilt to provide one "of equal or greater value," in a reasonable time. Thus, this matter is remitted to the Supreme Court, Suffolk County, to supervise the placing of funds in escrow or the posting of an undertaking, and to determine a reasonable time within which the structure is to be replaced or rebuilt. Brown, J. P., Lawrence, Kooper and Rosenblatt, JJ., concur.