In re ANTHONY SICARI, INC., Debtor.

Mitchell SHRON, as Trustee of Anthony Sicari, Inc., Plaintiff,

v.

M & G PROMO SERVICE, LTD., Mario Matarrese, and Louise Matarrese, Defendants.

Bankruptcy No. 90–31355.
Adv. No. 91–7056.

United States Bankruptcy Court, S.D. New York.

Sept. 3, 1992.

---

Klein & Genova, Newburgh, N.Y. by Thomas Genova, for debtor.

McCabe & Mack, Poughkeepsie, N.Y. by Richard DuVall, for defendants-movants.

Mitchell Shron, Chapter 7 Trustee.

## DECISION ON "UNDERTAKING" AS A PREFERENTIAL TRANSFER

### [11 U.S.C. § 547(b)]

JEREMIAH E. BERK, Bankruptcy Judge.

The former Chapter 11 Debtor, Anthony Sicari, Inc. ("Debtor"), commenced an adversary proceeding seeking to recover a $240,000.00 pre-petition transfer to M & G Promo Service, Ltd., Mario Matarrese, and Louise Matarrese ("Defendants") as an avoidable preferential transfer pursuant to Section 547(b) of the Bankruptcy Code ("Code"). Upon conversion of the case to Chapter 7, the preference action was assumed by the Chapter 7 trustee ("Plaintiff"). Defendants here move for summary judgment pursuant to Fed.R.Civ.P. 56.

## I. FINDINGS OF FACT

The following facts are not disputed. In September of 1987, Debtor gave to Defendants an uncertified check in the amount of $240,000.00 to purchase two parcels of real property. After receiving the deeds for these parcels, Debtor stopped payment on the check. Defendants sued the Debtor and others in New York State Supreme Court to impose an equitable vendor's lien and constructive trust against the real property. Defendants filed a "notice of pendency" [1] on July 18, 1988 to give notice

---

**1.** Article 65 of New York Civil Practice Law and Rules sets out the provisions for a notice of pendency. In summary, a notice of pendency is a provisional remedy that may be filed in any action pending before a New York or federal court in which the "judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." N.Y.Civ.Prac.L. & R. § 6501 (McKinney 1980). Serving as "constructive notice," to potential purchasers and others, *id.*, a notice of pendency "effectively ties up the defendant's property for the duration of

of their equitable claim to the property. On September 14, 1988, New York State Supreme Court Justice Joseph Torraca cancelled the notice of pendency conditioned upon Debtor posting an "undertaking"[2] in the sum of $240,000.00.

On September 26, 1988, the Debtor posted the $240,000.00 undertaking with the court and the notice of pendency was cancelled.[3] The $240,000.00 undertaking was held by the Ulster County Treasurer while the state court action progressed. The parties subsequently executed a stipulation of settlement which was approved by Justice Torraca. Pursuant to this settlement, on March 16, 1990 the County Treasurer released the funds comprising the undertaking to Defendants. The stipulation provided that the funds so released would be held in escrow by Defendants' counsel pending authorization to disburse the funds to the Defendants.

Thereafter, on May 30, 1990 an involuntary Chapter 7 petition was filed against the Debtor. Prior to entry of the order for relief on the involuntary petition, the Debtor filed a voluntary Chapter 11 petition. The petition filing date herein is deemed to be May 30, 1990.

The only issue presented by Defendants' motion for summary judgment is the time of the "transfer" under Code § 547(b). Plaintiff argues that the transfer took place on March 16, 1990, the date on which the County Treasurer released the undertaking to Defendants' counsel, which was within ninety days of the May 30 petition-filing date. Defendants contend that the transfer occurred on September 26, 1988, the date on which the Debtor paid the undertaking into court, well beyond the ninety-day preference reachback period.

## II. DISCUSSION

### A. Summary Judgment

■ Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56(c), applicable herein pursuant to Fed.R.Bank.P. 7056. Disposition by summary judgment is appropriate if there are no genuine issues as to any material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Whether or not each element of a preferential transfer under Code § 547(b) has been satisfied is a question of law. *First Fed. of Michigan v. Barrow*, 878 F.2d 912, 920 (6th Cir.1989); *Allegaert v. Chemical Bank*, 657 F.2d 495, 502 (2d Cir.1980). The burden of proving the absence of a genuine issue as to any material fact rests with Defendants. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To determine if any triable issue of fact exist, all reasonable inferences must be drawn and any ambiguities must be resolved in a light most favorable to Plaintiff. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

---

the lawsuit". Joseph M. McLaughlin, Supplementary Practice Commentaries, Article 65—Notice of Pendency (McKinney 1980 & 1992 Supp.).

**2.** An "undertaking" includes:
  1. Any obligation, whether or not the principal is a party thereto, which contains a covenant by a surety to pay the required amount, as specified therein, if any required condition, as specified therein or as provided in subdivision (c) section 2502, is not fulfilled; and 2. any deposit, made subject to the required condition, of the required amount in legal tender of the United States or in face value of unregistered bonds of the United States or of the state.

N.Y.Civ.Prac.L. & R. § 2501 (McKinney 1991).

**3.** An undertaking may be cancelled as follows:

In any action other than one to foreclose a mortgage or for partition or dower, the court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, upon such terms as are just, whether or not the judgment demanded would affect specific real property, if the moving party shall give an undertaking in an amount to be fixed by the court, and if: 1. the court finds that adequate relief can be secured to the plaintiff by the giving of such an undertaking; or 2. in such action, the plaintiff fails to give an undertaking, in an amount to be fixed by the court, that the plaintiff will indemnify the moving party for the damages that he may incur if the notice is not cancelled.

N.Y.Civ.Prac.L. & R. § 6515 (McKinney 1980).

1356, 89 L.Ed.2d 538 (1986); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

### B. Definition of a Preferential Transfer

Code § 547(b) provides that a trustee may avoid a transfer of an interest in a debtor's property where such transfer is:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ... and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Code § 101(54) defines "transfer" as including "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption[.]"

■ The purpose of these provisions is to assure "equality of distribution" among similarly situated creditors of the debtor. H.Rep. No. 595, 95th Cong., 1st Sess. 178 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *Ray v. City Bank and Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490, 1492 (6th Cir.1990); Martin J. Bienenstock, *Bankruptcy Reorganization* 1 (1987). To this end, Code § 547(b) broadly authorizes bankruptcy trustees to avoid preferential transfers. *Union Bank v. Wolas*, — U.S. —, —, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991).

To determine when the "transfer" under Code § 547(b) occurred, the characteristics of an undertaking must be explored. This analysis necessarily requires an examination of an undertaking under New York law, as the extent of the Debtor's property interest in the undertaking deposit is determined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 569 (2d Cir.1991) ("The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law."); *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir.1990); *Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871, 877 (S.D.N.Y.1991); *Royal Bank and Trust Co. v. Pereira (In re Lady Madonna Indus.)*, 76 B.R. 281, 288 (S.D.N.Y.1987).

### C. "Undertaking" Under New York Law

■ Under New York law, an undertaking refers to either cash or a surety's bond deposited into court. *See, e.g., Matter of Bon–Air Estates, Inc. v. Building Inspector*, 31 A.D.2d 502, 298 N.Y.S.2d 763 (Sup. Ct.1969). It has been alternately likened to a bond, cash deposited into court, and an escrow. The nature of the state court's dominion over the funds and the competing parties' interest in an undertaking is, however, unclear under New York law.

Historically, an undertaking derived from a bond:

At common law, the term "bond" referred to a written instrument, which had a clause with a sum fixed as a penalty, binding the parties to pay the same, conditioned, however, that the payment of the penalty might be avoided by the performance by some one or more of the parties of certain acts and had to be under seal. An instrument called an undertaking was later introduced by statute, which was merely a simplified bond without a seal. The term "undertaking" is now defined by statute.

11 N.Y.Jur.2d *Bonds* § 1, at 258 (1981) (footnotes omitted). In practice, undertaking is often used interchangeably with the term "bond" by both New York and federal

**660**

bankruptcy courts. *See, e.g., Gates Community Chapel of Rochester, Inc. v. Dennies (In re Gates Community Chapel of Rochester, Inc.),* 123 B.R. 700 (Bankr. W.D.N.Y.1991); *G.C. Murphy Co. v. Reserve Ins. Co.,* 54 N.Y.2d 69, 444 N.Y.S.2d 592, 429 N.E.2d 111 (1981); *see also* 11 N.Y.Jur.2d *Bonds* § 1 (1981). An undertaking is also equated with bond instruments. New York law provides that the transfer of funds into an undertaking is sufficient to satisfy the requirements for a bond. Gen.Constr.L. § 14 (McKinney 1951).

An undertaking is also similar to cash deposit into court. The courts generally hold that cash deposited pre-petition into court is not property of the depositor/debtor's estate under Code § 541 and therefore is not subject to avoidance under Code § 547(b). *Mid–Jersey Nat'l Bank v. Fidelity–Mortgage Investors,* 518 F.2d 640, 643 (3d Cir.1975) (decided under the former Bankruptcy Act); *c.f. Carter Baron Drilling v. Excel Energy Corp.,* 76 B.R. 172 (D.Colo.1987) (supersedeas bond deposited into court pending appeal).

■ We find, however, that an undertaking is most like an escrow. While lacking a statutory definition, the term "escrow" has been described as:

> "A writing, deed, money, stock, or other property delivered by the grantor, promisor or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered to the grantee, promisee or obligee."

*Young v. Farmingdale Food Mkt., Inc. (In re Lasercad Reprographics, Ltd.),* 106 B.R. 793, 798 (Bankr.S.D.N.Y.1989) (quoting *Black's Law Dictionary* 489 (5th ed. 1979)), *cited with approval in Fisher v. New York City Dep't of Hous. Preserv. and Dev. (In re Pan Trading Corp., S.A.),*

125 B.R. 869, 878 (Bankr.S.D.N.Y.1991); *see also George A. Fuller Co. v. Alexander & Reed, Esqs.,* 760 F.Supp. 381, 386 (S.D.N.Y.1991); *Menkis v. Whitestone Sav. & Loan Ass'n,* 78 Misc.2d 329, 356 N.Y.S.2d 485 (1974) In substance, an escrow is established if (1) property is delivered to a third party by the grantor; (2) the third party holds the property until certain conditions precedent are satisfied; and (3) the third party delivers the property to the grantee.

■ Although Plaintiff argues that the instant undertaking was not equivalent to an escrow as there was no agreement as to the conditions governing its terms, we disagree. First, under New York law no formal agreement is required to create an escrow. Rather, mere delivery and retention by a third party until the occurrence of a contingency or performance of a condition is necessary. *In re Lasercad Reprographics, Ltd.,* 106 B.R. at 798. In our case, the Ulster County Treasurer was to hold the funds and then to pay any amount Defendants recovered against Debtor.

Second, even if Plaintiff's argument that the conditions governing the terms of an escrow must be specified to create a valid escrow was correct, this requirement was satisfied as well. In our case, the terms governing the deposit and release of the funds were set out by Justice Torraca in his September 14, 1988 order. His order provided that the notice of pendency would be canceled "upon the giving of an undertaking by [Debtor] in the sum of $240,000 *conditioned to pay [Defendants] the amount of any judgment recovered by them* against [Debtor], with interest thereon." Memorandum of Law on Behalf of the Debtor in Opposition to Motion of Mario and Louise Matarrese for Summary Judgment, Ex. A (original emphasis). Thus, the conditions governing the terms of the undertaking as an escrow were specified.[4]

---

**4.** Further, it was the Debtor who moved the Ulster County Supreme Court to cancel the notice of pendency in exchange for an undertaking. If Debtor failed to make the undertaking, the notice of pendency would have remained on the property while the state court litigation en-

sued. As one court observed, " '[T]he very end to be achieved by the filing of undertakings, conditioned upon the payment of the liens found to be outstanding, is to relieve the real estate from incumbrances, so that the same may freely be alienated by the owner.' " *Amadori*

We find that the deposit of funds into an escrow account is substantially similar to the transfer of funds into and out of an undertaking. The Ulster County Treasurer held the deposited funds much as an escrow agent would hold property deposited into an escrow account. *See, e.g., G.C. Murphy Co. v. Reserve Ins. Co.*, 54 N.Y.2d 69, 444 N.Y.S.2d 592, 429 N.E.2d 111; *Lerner v. Johnson*, 167 A.D.2d 372, 561 N.Y.S.2d 601, 602 (1990); *Glotzer v. Glotzer*, 111 Misc.2d 171, 443 N.Y.S.2d 812, 813–14 (1981).

### D. Relevant Transfer Date

■ Recognizing that an undertaking is equivalent to an escrow, we must now determine the relevant transfer date for preference avoidance purposes under Code § 547(b). "The courts have uniformly held that the transfer of funds into escrow occurs at the time the debtor *deposits* the funds into the escrow account." *Pan American World Airways, Inc. v. Care Travel Co. Ltd. (In re Pan Am Corp.)*, 138 B.R. 382, 388 (Bankr.S.D.N.Y.1992) (emphasis in original); *see also Cedar Rapids Meats, Inc. v. Hager (In re Cedar Rapids Meats, Inc.)*, 121 B.R. 562, 569–70 (Bankr. N.D.Iowa 1990); *Sapir v. Eli Haddad Corp. (In re Coco )*, 67 B.R. 365 (Bankr. S.D.N.Y.1986); *Hassett v. Blue Cross and Blue Shield (Matter of O.P.M. Leasing Servs., Inc.)*, 46 B.R. 661 (Bankr.S.D.N.Y. 1985). Neither the date the funds are released to the grantee nor the date the funds revert back to the grantor for failure of conditions precedent, is relevant under Code § 547(b).

Plaintiff claims, however, that two transfers occurred: first, when the funds were placed in the undertaking and second, when the funds were released to Defendants. Plaintiff then argues that " 'the general rule is that title passes from the time of the second delivery.' " *In re Lasercad Reprographics, Ltd.*, 106 B.R. at 798 (quoting *Ellison Assocs. v. Eastwood Management Corp. (Matter of Ellison Assocs.)*, 13 B.R. 661, 672 (Bankr.S.D.N.Y.1981), *aff'd*, 63 B.R. 756 (S.D.N.Y.1983)). Plaintiff's reli-

ance on *Lasercad*, however, is misplaced. That case addressed the validity of a security interest in an alleged escrow, rather than the issue at hand which concerns the timing of a transfer either into or out of the escrow. Plaintiff's argument otherwise lacks support.

Under New York law, "a deposit of property placed in escrow creates in the grantee an equitable interest in the property and upon full performance of the conditions according to the escrow agreement, or upon waiver of those conditions, title will vest in him." *100 Lindbergh Boulevard Corp. v. Gurnett Rock, Inc. (In re 100 Lindbergh Boulevard Corp.)*, 128 B.R. 53, 57 (Bankr.E.D.N.Y.1991) (citing 20 N.Y.Jur. §§ 9, 31 (2d ed. 1986)). Thus, for example, where the debtor pre-petition deposited $500,000 with an escrow agent and the parties thereafter agreed to release the funds from escrow pre-petition, legal and equitable title to the property were found to have vested in the recipient of the funds, exclusive of any interest of the debtor. *Id.*

■ Although the definition of "transfer" is broad enough to encompass both transactions, equitable principles must be considered. *Matter of Ellison Assocs.*, 13 B.R. at 672 ("Equitable doctrines of relation, estoppel by deed and equitable title must be reviewed....") A bankruptcy trustee is vested with only that title which the debtor held on the date the bankruptcy petition was filed, and such title is subject to the imposition of equitable liens. *Lewis v. Diethorn*, 893 F.2d 648, 650 (3d Cir.1990) (citing *General Motors Acceptance Corp. v. Jones (In re Czebotar )*, 5 B.R. 379, 382 (Bankr.E.D.Wash.1980)). Although Defendants did not have absolute title to the funds while in the Ulster County Treasurer's possession, principles of equity impressed a constructive trust upon the undertaking during the pendency of the state court litigation. *N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons )*, 772 F.2d 462, 466–67 (8th Cir.1985); *In re Rosenshein*, 136 B.R. 368, 373 (Bankr.S.D.N.Y.1992); 55 N.Y.Jur.2d *Escrow* § 9 (1986). Such equitable inter-

*Constr. Co. v. Hoffenberg (Matter of Stanndco Developers, Inc.)*, 534 F.2d 1050, 1053 (2d Cir. 1976) (quoting *White Plains Sash & Door Co. v.*

*Doyle,* 262 N.Y. 16, 186 N.E. 33, 34 (1933)); *see also Melniker v. Grae*, 82 A.D.2d 798, 439 N.Y.S.2d 409 (1981).

ests are upheld notwithstanding the intervention of bankruptcy. *In re N.S. Garrott & Sons,* 772 F.2d at 466; *In re Rosenshein,* 136 B.R. at 373.

> Where state law bars a debtor from having an interest in an escrow fund, and instead, requires the imposition of a constructive trust on the debtor's reversionary interest because of the debtor's inequitable conduct, such minimal or bare legal interest, will not support a broad application of the bankruptcy concept of property of the estate with respect to the escrow fund.

*In re Rosenshein,* 136 B.R. at 372 (citing *In re N.S. Garrott & Sons,* 772 F.2d at 467).

Accordingly, " '[c]ourts of bankruptcy recognize that money held in escrow is not property which vests in the trustee in bankruptcy.' " *Matter of O.P.M. Leasing Servs., Inc.,* 46 B.R. at 667–68 (quoting *Gulf Petroleum, S.A. v. Collazo,* 316 F.2d 257, 261 (1st Cir.1963)); *(citing Carlson v. Farmers Home Admin. (Matter of Newcomb*), 744 F.2d 621, 626–27 (8th Cir.1984); *Cate v. Nicely (In re Knox Kreations, Inc.*), 656 F.2d 230, 231 (6th Cir.1981); *Matter of Simon,* 167 F.Supp. 214, 215 (E.D.N.Y.1958)).

The courts have therefore disposed of the two-transfer argument by finding that once funds were deposited into an escrow, equitable principles removed the funds from the debtor's estate. Thus, the subsequent transfer of funds out of the escrow was irrelevant for preference transfer purposes. As one court explained:

> At the creation of the escrow there was an unavoidable transfer which left the debtor with only a contingent right to the escrowed funds.... In light of this unavoidable transfer, the transfer that occurred when the condition of the escrow was met is not avoidable because it did not deprive the debtor's estate of anything of value. The pending physical transfer cannot be avoided because it is not a transfer of "property of the estate."

*Matter of Newcomb,* 744 F.2d at 627, *cited with approval in Matter of O.P.M. Leasing Servs., Inc.,* 46 B.R. at 667–68; *see also Matter of Simon,* 167 F.Supp. at 215.

Where release of escrowed funds occurs post-petition, a different outcome may result. *See, e.g., Wilson v. United Sav. of Texas (Matter of Missionary Baptist Found. of Am. Inc.*), 792 F.2d 502, 506 (5th Cir.1986); *Gassen v. Universal Bldg. Materials, Inc. (Matter of Berkley Multi–Units, Inc.*), 69 B.R. 638 (Bankr.M.D.Fla.1987). In *Matter of Berkley Multi–Units, Inc.,* for example, money was released from the escrow post-petition. The court held that where an escrow's contingencies are not fulfilled prior to bankruptcy, the debtor holds an interest in the property. *Matter of Berkley Multi–Units, Inc.,* 69 B.R. at 641–42. Accordingly, the court found the funds in escrow remained property of the estate as of the commencement of the case.

■ However, even if the release of the funds to Defendants by the Ulster County Treasurer could be deemed a "transfer" of Debtor's interest in property, such was not in payment of an antecedent debt, a prerequisite for a preferential transfer. The release of funds from the undertaking resulted from settlement of litigation pending between the Debtor and the Defendants. The transfer was not on account of an antecedent debt, but served to extinguish a *current* obligation.

In *Lewis v. Diethorn,* for example, the debtor entered into an agreement which provided that plaintiffs would receive a sum of money from the debtor in exchange for discontinuance of the suit and cancellation of the notice of pendency (lis pendens) they had filed against the debtor's real property. Although the debtor paid plaintiffs within one week prior to filing his Chapter 7 petition, the bankruptcy court denied the trustee's attempt to avoid the transfer as preferential under Code § 547(b) as the payment was deemed not to be on account of an antecedent debt. *Lewis v. Diethorn,* 893 F.2d at 651.

As in *Lewis v. Diethorn,* the transfer to Defendants herein likewise was not payment on an antecedent debt, but in settlement of pending litigation. The Debtor did not receive freedom from liability on an antecedent debt, but rather received freedom from the risk of litigation, plus the increased value resulting from cancellation of the notice of pendency. *Id.* at 650.

Under New York law, funds deposited pursuant to an undertaking are held in a manner substantially similar to escrowed funds. As the Debtor transferred the funds into the undertaking more than ninety days before the bankruptcy filing, the undertaking deposit is protected from recovery as a preference.

### III. CONCLUSIONS OF LAW

1. The court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(F).

2. There being no genuine issue as to any material fact under Code § 547(b), Defendants are entitled to summary judgment as a matter of law pursuant to Fed.R.Civ.P. 56. The "transfer" of the $240,000.00 occurred on September 26, 1988 pursuant to state court order, which was beyond the ninety-day reachback period of Code § 547(b)(4)(A). Accordingly, Defendants' motion for summary judgment is granted.

A separate order shall enter in conformity herewith.