OPINION OF THE COURT
 

 Jasen, J.
 

 On this appeal, we are called upon to reconcile various provisions of the Uniform Insurers Liquidation Act. (Insurance Law, § 517
 
 et seq.)
 
 The specific question presented
 
 *73
 
 is whether, absent the appointment of an ancillary receiver in this State, a claim asserted in a New York action against an out-of-State insurance company that is undergoing liquidation must be pursued in the domiciliary State of the insurer even though that claim is secured by an undertaking filed pursuant to section 59-a of the Insurance Law.
 

 In 1973, plaintiff G. C. Murphy Company (Murphy) brought this action against various parties, including defendant Reserve Insurance Company (Reserve), seeking to recover $875,000 in unearned premiums to which Murphy claims it is entitled by reason of the cancellation of an insurance policy issued in New York to Murphy by Reserve. Reserve is an Illinois corporation that never obtained a license to do business in New York. Because Reserve was an unauthorized foreign insurer, Special Term issued an order pursuant to section 59-a of the Insurance Law
 
 [1]
 
 directing Reserve to post an undertaking in the amount of $1,077,000 before filing any pleadings in the action. In compliance with this order, a bond eventually was supplied by American Reserve Insurance Company of New York (American Reserve), an affiliate of Reserve.
 

 On May 16, 1979, the Circuit Court of Cook County, Illinois, issued an order appointing the Director of Insurance of the State of Illinois as liquidator of Reserve. The same court, on May 29, 1979, issued a second order placing Reserve in liquidation because of insolvency. This order,
 
 inter alia,
 
 enjoined all persons “from bringing or further prosecuting any action” against Reserve, “from obtaining preferences, judgments, attachments, or liens” against the defendant, and “from asserting any claim against the Liquidator or Reserve Insurance Company except insofar as such claims arise in liquidation proceedings of Reserve Insurance Company.”
 

 
 *74
 
 Pursuant to the Illinois order of liquidation and the provisions of the Uniform Insurers Liquidation Act, Reserve, on behalf of the liquidator, moved for dismissal of the action against it or, alternatively, for a stay pending the Illinois liquidation proceedings. For its part, Murphy made two motions: (1) for an order requiring Reserve to deposit additional security with the court and enjoining Reserve from removing or transferring property deposited by it with American Reserve; and (2) for leave to join American Reserve as a party defendant and to assert a cause of action against it as surety for the obligation of Reserve.
 

 Special Term consolidated the three motions for disposition. The court denied Reserve’s motion to stay or dismiss the action, stating that “the Uniform Insurers Liquidation Act may not be used to deprive [Murphy] of the security provided to it under subdivision 3 of section 59-a of the Insurance Law or deprive this court of jurisdiction.” (101 Misc 2d, p 734.) In addition, Special Term granted Murphy’s motion to join American Reserve as a party defendant and directed that the Reserve property left with American Reserve was available as part of the security provided to Murphy.
 

 On appeal, the Appellate Division, two Justices dissenting, modified. The court below held that, since no ancillary receiver was appointed in New York, “Murphy must pursue the instant claim against the liquidator in Illinois.” (74 AD2d, p 239.) The Appellate Division accordingly granted Reserve’s motion to the extent of staying the action as against it, with leave given to Murphy to file its claim against the liquidator in Illinois and denied Murphy’s motions as academic. Thereafter, the Appellate Division granted Murphy leave to appeal to this court, certifying the following question for our review: “Was the order of this Court, which modified the order of Supreme Court, properly made?”
 

 In this court, Murphy contends that, by virtue of the undertaking filed pursuant to section 59-a of the Insurance Law, it is the owner of a “secured claim” within the meaning of the Uniform Insurers Liquidation Act (see Insurance Law, § 517, subd 11) and that as such, it is entitled
 
 *75
 
 under section 522 of the Insurance Law to proceed against this security in a New York action, independent of the Illinois liquidation proceedings. We cannot agree. Assuming that Murphy possesses a “secured claim”
 
 [2]
 
 , we nevertheless conclude that the Uniform Insurers Liquidation Act mandates that Murphy pursue its claim against Reserve in the Illinois liquidation proceedings.
 

 At the outset, we dispose of a procedural issue. Murphy’s application, pursuant to CPLR 1002 (subd [b]) and 3025 (subd [b]), to join the surety, American Reserve, as a party defendant was granted by Special Term. The Appellate Division denied the application on the ground that it was “academic” in view of that court’s order staying the entire action against Reserve. We conclude that this was error. Inasmuch as our essential purpose in affirming the determination of the Appellate Division to stay this action in New York pending the disposition of Murphy’s claims in the Illinois liquidation proceedings is to protect the rights that Murphy acquired against the surety pursuant to the provisions of section 59-a, Murphy should now be granted permission to join the surety as a defendant, and, if so joined, the surety should be afforded the opportunity to protect its interests. The opposition to the motion to join the surety was based on the contention that the action against Reserve should be dismissed and that if it were dismissed, the dependant claim against American Reserve as surety would
 
 *76
 
 be moot. Inasmuch as the action against Reserve is not being dismissed, there is no substance to the opposition to join American Reserve as a party defendant. Of course, the action against the surety cannot proceed until there has been a favorable adjudication of Murphy’s claim against Reserve.
 

 Difficulties encountered in the forced liquidation of multistate insurance companies led to the promulgation of the Uniform Insurers Liquidation Act. (13 Uniform Laws Ann [Master ed], pp 429-457.) In a prefatory note accompanying this act, the following observations were made by the National Conference of Commissioners on Uniform State Laws: “Insurance company assets take the form, for the most part, of special deposits required by state law, balances in the hands of insurance agents, policy premiums due but unpaid, and investments of reserve funds. The greater number of these assets naturally have their situs in the state of domicile of the company, but a substantial portion is normally scattered over the entire territory within which the company carries on its business. This is necessarily true of the special deposits required by the laws of non-domiciliary states and the balances in the hands of nonresident agents. On the other side of the balance sheet the liabilities of insurance companies, consisting primarily of policy obligations, are also distributed over the several states in which the companies do business. This wide distribution of assets and liabilities creates a formidable array of problems when liquidation, rehabilitation or reorganization proceedings become necessary for an insurer which has drifted into financial difficulties. The equitable and expeditious solution of these problems is rendered the more difficult by wide differences in the provisions of the statutes of the several states regarding such matters as special deposits, preferred claims, securities, set-off, and the administrative and judicial procedures to be followed. If statutory means can be provided which will facilitate delinquency proceedings by eradicating these difficulties they will be of great service.” (13 ULA [Master ed], pp 429-430.)
 

 The drafters went on to note six specific “embarrassments” that the uniform act was designed to eliminate: (1)
 
 *77
 
 the inefficient administration of the liquidation process caused by the appointment of receivers other than the various State Insurance Commissioners; (2) the lack of authority on the part of domiciliary receivers to proceed in non-domiciliary States leading to the dissipation of assets outside the home State and enabling out-of-State debtors to avoid their obligations; (3) the ineffective administration of the liquidation process caused by differences in the laws of the various States regarding the title and right to possession of the property of a defunct nonresident insurer; (4) the serious inconvenience in proving claims experienced by creditors living outside the defunct insurer’s domicile; (5) the problems generated by diverse State laws governing preferences such as wage claims, compensation claims and tax claims; and (6) the inequity resulting from preferences obtained by diligent nondomiciliary creditors with advance information of an insurer’s impending insolvency. (13 ULA [Master ed], pp 430-431.) Thus, the Uniform Insurers Liquidation Act was adopted with the main purpose in mind of providing a uniform system for the orderly and equitable administration of the assets and liabilities of defunct multistate insurers.
 

 Both New York and Illinois have adopted the Uniform Insurers Liquidation Act. (Insurance Law, § 517
 
 et seq.;
 
 Ill Rev Stat, ch 73, § 833.1
 
 et seq.)
 

 [3]
 

 Because Illinois qualifies as a “reciprocal state” (Insurance Law, § 517, subd 7; see
 
 Kelly v Overseas Investors,
 
 24 AD2d 157, revd on other grounds 18 NY2d 622), this State must recognize the right of the Illinois liquidator, as domiciliary receiver, to take possession of Reserve’s assets and to seek a stay of all proceedings against the defunct insurer. (Insurance Law, § 519, subd 2.) These are the exact goals that the Illinois Circuit Court’s liquidation order attempts to achieve.
 

 Where, as here, liquidation proceedings are commenced in a reciprocal State against an insurer domiciled in that
 
 *78
 
 State, New York residents may file their claims
 
 either
 
 with the ancillary receiver, if any, appointed in this State,
 
 or
 
 with the domiciliary receiver in the reciprocal State. (Insurance Law, § 521.) Under such circumstances, the statute confers upon the Superintendent of Insurance the exclusive right to act as an ancillary receiver in this State, provided that he determines that there are sufficient assets of the defunct insurer located within New York to justify the ancillary receivership or 10 or more residents of this State having claims against the nondomiciliary insurer petition the superintendent requesting the appointment of an ancillary receiver. (Insurance Law, § 519, subd 1.)
 

 In this case, there has been no ancillary receiver appointed in New York. In fact, plaintiff Murphy requested the Superintendent of Insurance to act as ancillary receiver in New York, but the superintendent declined to do so because Reserve’s assets in New York were insufficient to justify ancillary administration in this State. Therefore, under section 521 of the Insurance Law, in the absence of an ancillary receiver in New York, Murphy must pursue its claim against the liquidator in Illinois. (Accord
 
 Vlasaty v Avco Rent-A-Car System,
 
 60 Misc 2d 928;
 
 Clark v Standard Life & Ace. Ins. Co.,
 
 68 Ill App 3d 977;
 
 Zullo Lbr. v King Constr.,
 
 146 NJ Super 88.)
 

 Nor does Murphy’s reliance on subdivision 4 of section 522 of the Insurance Law serve to alter this result. That section, which relates to the priority of claims and not to how they are filed, provides that the owner of a “secured claim” may either surrender his security and file his claim as a general creditor or proceed against the security itself. If the latter option is chosen, any deficiency present after the security is exhausted is treated as an unsecured claim in the liquidation proceedings. This subdivision also provides that “[i]f the amount of the deficiency * * * has been adjudicated by a court of competent jurisdiction in proceedings in which the domiciliary receiver has had notice and opportunity to be heard, such amount shall be conclusive.” (Insurance Law, § 522, subd 4.) Plaintiff Murphy would have us interpret this isolated reference in the uniform act to a deficiency determination by a “court of com
 
 *79
 
 petent jurisdiction” as conferring an absolute right upon a secured creditor to have his entire claim against a defunct insurer adjudicated in an out-of-State action independent of the domiciliary liquidation proceedings. This we decline to do.
 

 As noted above, section 522 of the Insurance Law deals solely with the
 
 priority
 
 of secured claims. The exclusive provisions for the filing of such claims, found in section 521 of the Insurance Law, only allow claims to be presented to the ancillary receiver, if any, or the domiciliary receiver. Moreover, subdivision 4 of section 522 of the Insurance Law refers solely to the binding effect to be given to a “deficiency” adjudication made by a “court of competent jurisdiction”. No such deficiency has been established or is sought in the present action and, therefore, subdivision 4 of section 522 of the Insurance Law does not apply to this case.
 

 Beyond these reasons, the interpretation of section 522 of the Insurance Law that plaintiff would have us adopt would clearly frustrate the spirit and intent of the Uniform Insurers Liquidation Act. This uniform act is to “be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it.” (Insurance Law, § 524, subd 2.) Yet, under Murphy’s view, all secured creditors would be authorized to maintain actions independent of the liquidation proceeding and thereby render ineffectual the purpose of the uniform act to provide consolidated, orderly and equitable liquidations of multistate insurers. Indeed, under Murphy’s view, a claimant with advance notice of an insurer’s impending financial difficulties could obtain security for his claim and thereby completely avoid the liquidation proceedings to the potential detriment of other claimants. As noted earlier, this was a practice which the drafters of the uniform act specifically sought to prohibit. Nowhere in the history leading to the adoption of the uniform act can support be found for plaintiff’s contention that secured claimants can pursue their claims in independent court actions
 
 [4]
 
 , and the uniform act
 

 (n. contd.)
 
 
 *80
 
 itself clearly contemplates that “secured claims” are to be resolved within the liquidation proceedings. (Insurance Law, § 519, subd 2; § 521, subd 2.) Thus, we believe that, whatever the nature of the claim asserted, absent the appointment of an ancillary receiver, the Uniform Insurers Liquidation Act requires that the claimant prove his claim in the domiciliary liquidation proceedings.
 

 A few final comments are in order. We are not unmindful that the purpose of section 59-a of the Insurance Law is to provide New York residents with meaningful recourse to the courts of this State without having to pursue their claims against foreign unauthorized insurers in distant forums.
 
 [5]
 
 Nonetheless, the Legislature has specifically provided that to the extent that provisions of the Uniform Insurers Liquidation Act, when applicable, conflict with other provisions of the Insurance Law, the provisions of the uniform act control. (Insurance Law, § 524, subd 2.) We are also cognizant of the individual hardship suffered by the present plaintiff, who has been in the throes of litigation for the past seven years and now must pursue its claim in the distant forum of Illinois. By enacting the Uniform In
 
 *81
 
 surers Liquidation Act, our Legislature has determined that such occasional instances of adversity are outweighed by the paramount interest of the various States in seeing that insurance companies domiciled within their respective boundaries are liquidated in a uniform, orderly and equitable manner without interference from external tribunals.
 
 [6]
 

 For the reasons stated, the order of the Appellate Division should be modified to reinstate those portions of the order of Supreme Court which authorized the joinder of American Reserve Insurance Company as a party defendant and, as so modified, affirmed, with costs, and the certified question answered in the negative.
 

 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to respondent. Question certified answered in the negative.
 

 [1]
 

 . Section 59-a (subd 3, par [a]) of the Insurance Law provides in relevant part: “Before any unauthorized foreign or alien insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, such unauthorized insurer shall either (1) deposit with the clerk of the court in which such action, suit or proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action * * * or (2) procure a license to do an insurance business in this state.”
 

 [2]
 

 . We would note our disagreement with the view expressed by the Appellate Division that Murphy is the owner of a “special deposit claim”. A “special deposit claim” is defined as “any claim secured by a deposit made pursuant to statute for the security or benefit of a limited class or classes of persons, but not including any general assets.” (Insurance Law, § 517, subd 10.) The history of the Uniform Insurers Liquidation Act indicates that the term “special deposit” was intended to mean security deposits exacted from a foreign insurer as a condition precedent to doing business in a State for purposes of providing a general fund for the protection of resident policyholders. (See Handbook of Nat Conference of Comrs on Uniform State Laws, 1936, p 258.) Such “special deposits” are required in this State. (Insurance Law, §§ 103-104.) An undertaking posted by an
 
 unauthorized
 
 foreign insurer pursuant to section 59-a of the Insurance Law, however, secures a particular claim and is filed only after an action has been instituted against the insurer. As such, a claim backed by an undertaking filed pursuant to section 59-a should be classified under the broader definition of a “secured claim” found in subdivision 11 of section 517 of the Insurance Law: “ ‘Secured claim’ means any claim secured by mortgage, trust, deed, pledge, deposit as security, escrow, or otherwise”.
 

 [3]
 

 . The Uniform Insurers Liquidation Act was adopted by the National Conference of Commissioners on Uniform State Laws in 1939. (See Handbook of Nat Conference of Comrs on Uniform State Law, 1939, pp 141-142.) One year later, the uniform act was enacted in New York. (L 1940, ch 631.) To date, 31 States have adopted the act. (See 13 ULA [Master ed], p 429.)
 

 [4]
 

 . The major concern of the drafters of the uniform act in regard to “secured claims” centered around the constitutionality of a proposed draft which
 
 *80
 
 would have placed secured and unsecured claims on equal footing in the liquidation proceedings, thereby displacing the vested rights of those whose claims were secured. (Handbook of Nat Conference of Comrs on Uniform State Laws, 1937, p 331.) There is no indication, however, that the drafters were concerned with affording secured creditors a local forum independent of the liquidation proceedings in which to adjudicate their claims. Interestingly, the last proposed draft of the uniform act did not even contain the language presently found in subdivision 4 of section 522 of the Insurance Law. Rather, the section relating to “secured claims” provided only that the amount of any deficiency was to “be ascertained and determined in the delinquency proceeding in the domiciliary state of [the] insurer.” (Handbook of Nat Conference of Comrs on Uniform State Laws, 1938, p 380.) When, however, the uniform act was adopted one year later, the troublesome reference to deficiency adjudications “by a court of competent judisdiction” inexplicably was inserted. (See 13 ULA, [Master ed], § 8, p 454.) Perhaps this was done by the drafters out of practical anticipation, which later proved true, that certain States that did not adopt the uniform act would nevertheless render judgments against defunct out-of-State insurers that would be entitled to full faith and credit. (See
 
 Clark v Williard,
 
 294 US 211.)
 

 [5]
 

 . Subdivision 1 of section 59-a provides in relevant part: “The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies.”
 

 [6]
 

 . One Federal court, in speaking of the statutes of New York relating to the liquidation of insolvent insurance companies, noted: “Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be entrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies.”
 
 (Motlow v Southern Holding & Securities Corp.,
 
 95 F2d 721, 725-726, cert den 305 US 609; see, also,
 
 Matter of Knickerbocker Agency
 
 [Holz], 4 NY2d 245.)