Kaye, J.
(dissenting). Transit Casualty Company — domiciled in Missouri, with its principal place of business in California— in December 1985 was declared insolvent and placed in liquidation by order of the Circuit Court of Cole County, Missouri. The order of liquidation made no provision for notice to Transit’s approximately 100,000 policyholders. The court’s order simply recited "All policies of insurance issued by defendant Transit Casualty Company cancelled effective at midnight on December 20, 1985.”
Although not required by the court to do so, the Missouri receiver nonetheless mailed notice to all Transit policyholders; he also arranged for publication of notice of Transit’s liquidation in States where the company had been authorized to do business, including New York. Because the Missouri receiver misaddressed the envelope directed to claimant, however, claimant was unaware that his insurance coverage had been terminated at the time of his loss in February 1986. Claimant seeks to recover his loss from the New York Superintendent of Insurance, Transit’s ancillary receiver (and the New York Property/Casualty Insurance Security Fund), on the theory that he was entitled under his policy to 10 days’ notice before the insurer could cancel his coverage.
This Court now agrees with claimant, holding New York liable for Missouri’s misfeasance. The majority arrives at this result by concluding that the notice provisions contained in claimant’s policy of insurance — and presumably, therefore, the notice provisions contained in every policy issued by foreign insurers licensed in this State — were "vested” at the time of the company’s liquidation, and consequently survive liquidation to bind the New York ancillary receiver. In that this conclusion lacks any basis in law and adds unwarranted *22 uncertainty to liquidation proceedings involving multistate insurers, I must dissent.
As claimant acknowledges, all insurance policies issued by Transit could be canceled by operation of law upon the insurer’s liquidation. In liquidations, creditors with unconditional claims against the insolvent insurer at the time of liquidation —for example, policyholders who had incurred liability to others or had been sued by those making claims against them —of course possess certain, fixed obligations of the insurer (see, Matter of Empire State Sur. Co., 214 NY 553, 565-566; see also, People v Metropolitan Sur. Co., 205 NY 135, 145-147). By the same token, policyholders of a bankrupt insurer are entitled to the return of unearned premiums — again, an unconditional obligation owing at the time of liquidation.[1] In each example, the contractual liability surviving liquidation— the debtor/creditor relationship — is fixed at the time the company ceases its existence, and the claims may be accounted for in facilitating the equitable distribution of the insurer’s assets. No comparable liability is to be found here.
While the Court speaks of a "vested” right to notice, hinting at due process protections attendant on a loss of property rights, its legal analysis is explicitly premised solely on contract law, not constitutional law (majority opn, at 15): "what remained to be done [at liquidation] was for the company, or its successor, to perform the contractual obligation” of giving notice of cancellation (majority opn, at 18). Thus, unlike a due process requirement of "reasonable” notice, the Court’s contract rationale, for this and future cases, binds New York ancillary receivers of foreign insolvents to the actual contract terms found in the insurers’ individual policies with New York residents. Moreover, the Court is imposing an even greater duty on the Superintendent than the contract imposed on the insurer. Rather than notification in the event of cancellation by the insurance company — Transit’s contractual obligation — the Superintendent must give notice upon cancel *23 lation by operation of law, an event clearly not covered by the contract provision.
There is no precedent for this novel conclusion; none is cited. The majority at most offers the "analogous” situation of a creditor in a liquidation or bankruptcy proceeding (majority opn, at 19). Any relationship between the two, however, is elusive. That an insured may be a creditor for purposes of a fixed obligation arising prior to liquidation does not support the quite different conclusion that an insured is also a "creditor” for notice purposes. Are all executory contract obligations —or the expectation that the obligation will be fulfilled — now to be considered "vested” at the time of entry of a liquidation order? That would signal a remarkable change in the law.
Although the majority concludes that the "present liquidation procedures and practices are not as inflexible as the Superintendent urges” (majority opn, at 19), a review of the law in this heavily regulated area reveals that the majority’s holding is contrary to the uniform scheme established for liquidation of multistate insurers.
The Uniform Insurers Liquidation Act was adopted in 30 States, including New York, in order to provide "a uniform system for the orderly and equitable administration of the assets and liabilities of defunct multistate insurers.” (Murphy Co. v Reserve Ins. Co., 54 NY2d 69, 77; see, Insurance Law § 7415.) Significantly, the Uniform Act contains no provision for notification to policyholders. It does provide that in a "delinquency proceeding in a reciprocal state [Missouri for example] against an insurer domiciled in that state, claimants residing in this state may file claims either with the ancillary receiver, if any, appointed in this state, or with the domiciliary receiver. All such claims must be filed on or before the last date fixed for the filing of claims in the domiciliary proceeding.” (Insurance Law § 7412 [a].)
It is clear, however, that whatever date is set by the court in the domiciliary State will henceforth have no effect on claims made against the ancillary receiver in New York, although the New York Legislature has seen fit to adopt the Uniform Act and is — or was — a "reciprocal” State. A New York claimant with a "late” claim would certainly file against the ancillary receiver, whose exposure to liability under the policy might be far greater than that of its out-of-State counterpart.
Moreover, liability may extend beyond the assets of the *24 defunct insurance company, as such claims may eventually be allowed against the insurance security fund established pursuant to article 76 of the Insurance Law (see, Matter of Professional Ins. Co. [Jason — Superintendent of Ins. of State of N. Y.], 67 AD2d 850, affd 49 NY2d 716). The majority’s statement that allowing this claim "is not inequitable to other policyholders who were informed of the court’s order and thus had an opportunity to continue their coverage” (majority opn, at 20) misses the point. As the court in Matter of Professional Ins. Co. noted, the prejudice in such a case would arise because "[tjhere exists a potential for dilution of the timely filed claims, and because the security fund is built up with premiums from policyholders of all carriers * * * they will be burdened with additional premiums to replenish the fund earlier than contemplated” (67 AD2d, at 851; see also, Alliance of Am. Insurers v Chu, 77 NY2d 573). What better example of the "unwarranted dissipation” of assets (majority opn, at 20) than the dilution of timely filed claims in ancillary receivership proceedings?[2]
Thus, the majority has effectively undermined the goals of the Uniform Act and injected a new uncertainty into the liquidation process, uncertainty that translates into potentially greater liability for the New York ancillary receiver and security fund. As the present case demonstrates, the New York Superintendent, when acting as ancillary receiver for a foreign insurer, can protect itself against liability, and establish a firm date for filing claims, only by securing the books and records of the company and mailing notice of the liquidation to all New York policyholders. Even then, the ancillary receiver necessarily remains liable for any losses incurred by policyholders during the "window” period. Moreover, the New York Superintendent will also have to inspect each policy to satisfy compliance with contractual notice provisions, since we now declare that the right to the notice specified in each policy "vests” upon the insurer’s liquidation. There is no basis in the law of contracts for the imposition of such an onerous responsibility.
*25 At the very least, the Court’s conclusion points up the need for statutory reform, to provide for notice to policyholders in a way that discourages forum-shopping and assures the objectives of fairness and uniformity that were seemingly secured by adoption of the Uniform Insurers Liquidation Act.
Judges Simons, Alexander and Bellacosa concur with Chief Judge Wachtler; Judge Kaye dissents and votes to affirm in a separate opinion in which Judges Titone and Hancock, Jr., concur.
Order reversed, etc.

. The majority’s citation to Matter of Consolidated Mut. Ins. Co. (77 NY2d 144; majority opn, at 18) is disturbing. That case involved the obligation to continue retirement benefits provided to the insurer’s employees and turned on the application of settled legal principles developed under the ERISA vesting scheme. The narrow holding of that case, in an area of law with unique policy concerns, should not be used to justify the unsettling of settled law in another heavily regulated area with its own distinct policy considerations. Consolidated Mutual provides no support for the recognition, in a liquidation proceeding, of the executory promise to give notice.

. The prefatory note to the Uniform Act, in commenting on dissipation of assets, attributes the problem to the fact that domiciliary receivers previously had little authority in nondomiciliary States. The Court’s decision in effect restores that problem. Once again, domiciliary receivers and, most importantly, the cut-off dates set in domiciliary States, will have no impact on the filing of claims in this jurisdiction, undermining the reciprocal rights granted under the Uniform Act (see, 13 ULA 322-323 [1986 Master ed]; see also, Insurance Law § 7412 [a]).