**SIGNAL CAPITAL CORPORATION,**
Plaintiff,

v.

**EASTERN MARINE MANAGEMENT, INC.,** Global Insurance Company, S.A., Windward International, Inc. and Joseph Cacici, **Defendants.**

No. 94 Civ. 8826 (SS).

United States District Court,
S.D. New York.

Sept. 15, 1995.

**1168**

Haight, Gardner, Poor & Havens, New York City (John Toriello, Christopher G. Kelly, of counsel), for Plaintiff.

Chalos & Brown, P.C., New York City (Robert J. Brown, Harry A. Gavalas, of counsel), for Defendants Eastern Marine Management, Inc. and Global Insurance Company, S.A.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiff moves for an order pursuant to N.Y.Ins.L. § 1213 ("§ 1213") to strike the Answer of defendant Global Insurance Company, S.A. ("Global") and enter a default judgment for Global's failure to comply with § 1213, or, in the alternative, to require the posting of a bond by Global. For the reasons set forth herein, the motion to secure a bond is **GRANTED.**

### Background

This case arises from the sinking of the ocean-going barge Morris J. Berman off the coast of Puerto Rico on or about January 15, 1994. The barge's owner, New England Marine Services, Inc., is bankrupt and plaintiff Signal Capital Corporation ("Signal"), as mortgagee of the barge, was an additional assured of the hull policy covering the barge. The policy was purportedly issued by Global through an underwriter, Eastern Marine Management, Inc. ("Eastern Marine"). Defendant Windward International, Inc. ("Windward") purportedly acted as broker in the transaction. Joseph Cacici is an officer of Windward. All defendants have appeared and interposed Answers. The central issue in the underlying case is whether the barge owner operated the Morris J. Berman knowing it was unseaworthy, thus voiding the contract of insurance.

Signal now moves, however, to strike Global's Answer and enter a default judgment against Global based on § 1213. Section 1213 requires, in relevant part:

(c)(1) Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:

(A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in any proceeding ...; or

(B) procure a license to do an insurance business in this state....

(e) This section shall not apply to any proceeding against any unauthorized foreign or alien insurer arising out of any contract of insurance effectuated in accordance with subsection (b) or (c) of section two thousand one hundred seventeen of this chapter....

Global, which admits its alien status, claims exception under § 2117(b)(3), which provides that alien issuers of marine insur-

ance contracts to New York residents can be excluded from § 1213's bond requirement if they are issuers of

> marine insurance of the following kind or kinds, *where it is reasonable to do so with due regard to the interests of all concerned* and whether or not, at the time of such negotiation, the subject matter of such insurance is within or without the state ...

(emphasis added)

One of the kinds of marine insurance listed in § 1213(b)(3) is the type of policy at issue here. My inquiry, thus, focuses on whether issuance of the policy at issue here was "reasonable" with "due regard to the interests of all concerned."[1]

### Discussion

As a preliminary matter, some review of the cases governing a federal court's responsibilities in deciding issues of state law applicable to admiralty cases is required.

Notwithstanding admiralty jurisdiction, the Supreme Court has held that federal courts must implement state insurance laws applicable to marine insurers, provided such laws do not intrude on federal admiralty principles. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321, 75 S.Ct. 368, 374–75, 99 L.Ed. 337 *reh'g denied*, 349 U.S. 907, 75 S.Ct. 575, 99 L.Ed. 1243 (1955) ("We, like Congress, leave the regulation of marine insurance where it has been, with the States"). The Second Circuit has described the *Wilburn Boat* doctrine, which is now hornbook law, as follows: "[M]arine insurance policies are governed by state insurance regulations, unless federal courts have fashioned an admiralty rule on point, or unless the need for such a rule exists." *Youell v. Exxon Corp.*, 48 F.3d 105, 110 (2d Cir.1995). The principle underlying the *Wilburn Boat* doctrine has recently been reiterated in

*American Dredging v. Miller*, —— U.S. ——, ——, 114 S.Ct. 981, 984, 127 L.Ed.2d 285 (1994) (federal jurisdiction over admiralty cases has never been entirely exclusive and thus federal courts should defer to state procedural rules in deciding such cases). *American Dredging* did not purport to define the line separating permissible from impermissible state regulation, but asserted that such state laws must not be "either a 'characteristic feature' of admiralty or a doctrine whose uniform application is necessary to maintain the 'proper harmony' of maritime law." *American Dredging*, at ——, 114 S.Ct. at 985. The Second Circuit has, even before *American Dredging*, recognized that prejudgment remedies like the one sought here are procedural in nature, and, moreover, harmonious with federal admiralty jurisprudence. *See, e.g. Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648 (2d Cir.1979). The principle has been reiterated recently in *Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394, 402 n. 4 (2d Cir.1995). One circuit has expressly determined that state laws requiring foreign insurers to post a bond in order to interpose pleadings does not intrude on federal admiralty law. *Bank of San Pedro v. Forbes Westar, Inc.*, 53 F.3d 273, 274 (9th Cir.1995) (citing *American Dredging*) ("California's bond requirement not only is part of the state's regulation of insurance, it is the kind of local policy that federal courts are to apply when sitting in admiralty.")[2]

By implication, *American Dredging* also requires a federal court, once having invoked state law, to apply that state's burden of proof requirements. Under New York law, the burden of proving eligibility for an exemption to a statute is on the party seeking the exemption. *Elmsford Transp.*

---

1. Global has also claimed a second exemption, available under § 2117(b)(2), which holds that "insurance against loss of or damage to property having a permanent situs outside this state" is exempt. Because § 2117(b)(3) specifically encompasses "marine insurance" and expressly states that the situs of the marine property insured is irrelevant, it is clear that the statute does not contemplate that marine insurers may utilize the § 2117(b)(2) exemption. Thus I need not address the issue of whether the barge at issue had a "permanent situs" outside of New York.

2. Because Global has answered without contesting jurisdiction, Supplemental Admiralty Rule B is not applicable here. But even if it were, application of New York laws permitting prejudgment remedies of the type sought here would work no harm on Rule B's scope. *Amoco Overseas Oil, supra.*

*Corp. v. Schuler,* 63 A.D.2d 1036, 1037, 405 N.Y.S.2d 792 (3rd Dept.1978). Moreover, "a statutory exception must be strictly construed so that the major policy underlying the legislation is not defeated. Exceptions extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception," *Radich v. Council of City of Lackawanna,* 93 A.D.2d 559, 562, 462 N.Y.S.2d 928 (4th Dept.1983) (citing McKinney's Cons.Laws of N.Y., Book 1, Statutes, § 213, at 372–373).[3]

In order to claim the benefits of the § 2117(b)(3) exception, therefore, defendants bear the burden of demonstrating that the insurance was reasonable and issued by Global with "due regard" to the insured's interests. In light of the legislative intent and statutory structure, the burden of proof must necessarily include the disclosure of the insurer's domicile and the providing of some persuasive evidence to the insured that the insurer is capable of making payment upon claims. In § 2117, the legislature relieved alien marine insurers of the burdens of New York licensure or bond requirements, but by the reasonableness and due regard language self-evidently intended to impose some lesser, but necessarily firm obligation on such insurers. In buying insurance, an insured seeks to pass the cost of loss to the insurer. The obligations of "reasonableness" and "due regard" can only be given meaning if disclosure is provided when the policy is issued that includes the insurer's jurisdiction of incorporation, principal place of business, and such financial information as is required to demonstrate solvency. Only then can reasonableness and due regard with respect to issuance of the policy by the insurance company be assessed. This is a greatly reduced burden compared to licensure or a bond, but any lesser standard would invite fraud. It is uncontested that Global did not supply such minimal information to its insured at the

time it issued the policy, and has not subsequently done so. Shortly after the loss occurred, plaintiff sought such information but was unable to obtain it from defendants Global, Eastern or Windward, or from Best's Insurance reports, in which insurers typically post financial information. Defendant Global admits these requests were not honored. Defs.' Mem. of Law at 10. I find that the failure to make minimal pedigree and financial information available concurrent with the issuing of a marine insurance policy is unreasonable, does not give due regard to the insured's interests and is thus violative of § 2117(b)(3). Moreover, failing to provide such information to the Court in opposition to the instant motion constitutes a failure of proof by Global in demonstrating its entitlement to the marine insurance exception of § 2117.

Defendant's protestations that it is uniquely the broker who has the duty of "reasonableness" under the statute are unavailing. Section 1213's exception language to the bond requirement applies to "any unauthorized foreign or alien *insurer.*" N.Y.Ins. Law § 1213(c)(1) (emphasis supplied). Moreover, Global has exclusive control over the information its insured seeks.

Further, Global's argument that "reasonableness" should be defined exclusively from the perspective of the insurer would vitiate the intention of the statute, which is to afford protections to New York residents (or foreign corporations licensed to do business in New York) holding insurance policies issued by alien insurers.[4] The phrase "with due regard to the interests of all concerned" in § 2117(b)(3) should be read to mean three sets of interests: (1) New York state's interest in discouraging insurance fraud, i.e. the public policy interest, (2) the particular policy holder's interest in obtaining the rudiments of information regarding its insurer that are needed to prosecute a claim and have com-

---

**3.** The result would be the same under federal law. *See, e.g. U.S. v. First City Nat'l Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967) (the general rule is that the claimant to the benefits to a statutory exception bears the burden of proving eligibility); *Israel–British Bank (London) Ltd. v. Federal Deposit Ins. Corp.,* 536 F.2d 509, 513 (2d Cir.1976) ("[T]he normal

rule of construction is that where words of exception are used, they are to be strictly construed to limit the exception") (citing cases).

**4.** Global's Memorandum of Law cites no case law to support its claim on this issue.

fort as to its collectibility, and (3) the marine insurer's interest in securing the benefits of the exemption from the bond and licensure requirement.

This result can be fairly read from the legislative purpose set forth in the preamble of § 1213, as well as the state and federal case law interpreting the statute. The preamble states:

> The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts.

N.Y.Ins.L. § 1213(a).

The New York Court of Appeals has held that § 1213's precursor was enacted to "provide New York residents with meaningful recourse to the courts...." *G.C. Murphy Co. v. Reserve Insurance Co.*, 54 N.Y.2d 69, 80, 444 N.Y.S.2d 592, 429 N.E.2d 111 (1981).[5]

### Conclusion

■ By having failed to supply such minimal information as its location and a balance sheet at the time the policy was issued and at all times subsequent, Global has forfeited the right to claim § 1213's exception. It must now either post a bond or have its Answer stricken and a default judgment entered.[6]

Section 1213(c)(1)(A) requires I set a bond in an amount sufficient to "secure the payment of any judgment which may be rendered in the proceeding." The maximum amount payable under the policy at issue is contested by the parties. Plaintiff claims the limit is $2,000,000 and defendants claim it is $1,000,000. Without in any way prejudging a final ruling on this issue, I shall set a bond at $1,000,000 because the record on this issue is scant and plaintiff has not yet met its burden of showing that the policy limit is as it claims. The bond shall be posted (or the alternative procedure described in footnote 6 is satisfied) within 30 days from the date of entry of this Opinion and Order.[7]

**SO ORDERED.**

---

5. Federal courts have reached the same conclusion. "New York Insurance Law § 1213 was enacted to aid New York residents who are insured by foreign insurance companies that are not authorized to do an insurance business in New York," *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 875 F.Supp. 1022, 1025 (S.D.N.Y.1995) (Edelstein, J.); *Moore v. Nat'l Distillers and Chemical Corp.*, 143 F.R.D. 526, 531 (S.D.N.Y.1992) (Roberts, M.J.) (§ 1213 is intended to protect the public); *Republic Ins. Co. v. Atlantica Ins. Co. Ltd.*, 1994 WL 163705, *1 (S.D.N.Y.1994) (Francis, M.J.) ("§ 1213 was designed to ensure that an alien insurer could satisfy any judgement rendered against it in favor of a New York resident.")

6. The statute also provides that if New York's insurance regulators certify to the court that Global "maintains with the state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be en-

tered in the proceeding," it may be relieved of the bond requirement. No such certification has been provided, but I will accept it in lieu of a bond.

7. Global has requested a hearing be held to determine the amount of the bond and hear arguments as to when it should be posted. Because $1,000,000 is what Global claims to be the amount in controversy, and because Global has been on notice for over nine months (since the filing of the complaint) that a bond might be ordered, there is no need to hold a hearing.