[806 NE2d 473, 774 NYS2d 465]

In the Matter of Neil D. Levin, as Superintendent of Insurance of the State of New York, Respondent, v National Colonial Insurance Company, Respondent, and Chase Manhattan Bank, N.A., Appellant.

Argued January 7, 2004; decided February 12, 2004

## POINTS OF COUNSEL

*Eileen J. Berkman,* New York City, *Alyssa Kelman* and *E. Regan Adams* for appellant. I. The New York trial court clearly had jurisdiction to decide the merits of this case. (*Ambiance, Inc. v Commodore Gen. Ins. Co.,* 553 F Supp 285; *In re Koreag, Controle et Revision S.A.,* 961 F2d 341, 506 US 865; *G.C. Murphy Co. v Reserve Ins. Co.,* 54 NY2d 69; *Matter of Transit Cas. Co.,* 79 NY2d 13; *Matter of Guardian Cas. Co.,* 161 Misc 859; *Matter of Union Indem. Ins. Co.,* 89 NY2d 94; *Stephens v American Home Assur. Co.,* 811 F Supp 937, 70 F3d 10; *Federal Trade Commn. v Metropolitan Communications Corp.,* 977 F Supp 295.) II. The Kansas order should not be given full faith and credit. (*Matter of Luna v Dobson,* 97 NY2d 178; *Lawlor v National Screen Serv. Corp.,* 349 US 322; *Kearns v General Motors Corp.,* 94 F3d 1553, 520 US 1186.) III. The public policy of the Insurance Law will be advanced by the reinstatement of the trial court order. (*Simonds v Simonds,* 45 NY2d 233; *In re Koreag, Controle et Revision S.A.,* 961 F2d 341; *Matter of Union Indem. Ins. Co.,* 89 NY2d 94; *Matter of Midland Ins. Co.,* 167 AD2d 75, 79 NY2d 253; *Stephens v American Home Assur. Co.,* 811 F Supp 937, 70 F3d 10.)

*Cozen O'Connor,* New York City (*Francine L. Semaya* and *William K. Broudy* of counsel), for National Colonial Insurance Company, respondent. I. This Court is required to give full faith and credit to the order of the Kansas liquidation court approving the classification and disposition of Chase's claim. (*Underwriters Natl. Assur. Co. v North Carolina Life & Acc. & Health Ins. Guar. Assn.,* 455 US 691; *G.C. Murphy Co. v Reserve Ins. Co.,* 54 NY2d 69; *Tolfree v New York Tit. & Mtge. Co.,* 72 F2d 702; *United States v Bank of N.Y. & Trust Co.,* 296 US 463; *American Cast Iron Pipe Co. v Statesman Ins. Co.,* 343 F Supp 860; *Matter of Bean v Stoddard,* 207 App Div 276; *Matter of New York Tit. & Mtge. Co.,* 163 Misc 454; *Matter of National*

*Tit. Guar. Co.,* 152 Misc 523.) II. The order of the Kansas liquidation court approving the classification and disposition of Chase's claim is a final order and must be given res judicata effect. (*Matter of Farmland Dairies v Barber,* 65 NY2d 51; *Underwriters Natl. Assur. Co. v North Carolina Life & Acc. & Health Ins. Guar. Assn.,* 455 US 691.) III. Because there are no special deposit claims or secured claims pending against the National Colonial Insurance Company (NCIC) trust account, the assets of the NCIC trust account must be paid to the domiciliary liquidator. IV. Public policy requires that Chase not benefit from its wrongdoing. (*Matter of Rothko,* 43 NY2d 305; *Town of Evans v Catalino,* 88 AD2d 780; *Simonds v Simonds,* 45 NY2d 233; *Bankers Sec. Life Ins. Socy. v Shakerdge,* 49 NY2d 939.)

*Jack A. Franceschetti,* New York City, and *Steven R. Harris* for Superintendent of Insurance of the State of New York, respondent. The Appellate Division decision incorrectly placed control of the trust fund assets with the Kansas liquidator. (*Tolfree v New York Tit. & Mtge. Co.,* 72 F2d 702; *United States v Bank of N.Y. & Trust Co.,* 296 US 463; *American Cast Iron Pipe Co. v Statesmen Ins. Co.,* 343 F Supp 860; *Matter of Bean v Stoddard,* 207 App Div 276; *Matter of New York Tit. & Mtge. Co.,* 163 Misc 454; *Matter of National Tit. Guar. Co.,* 152 Misc 523.)

### OPINION OF THE COURT

READ, J.

In this appeal we are asked whether Supreme Court properly exercised jurisdiction over a trust fund, established pursuant to New York Insurance Department Regulation 41, to resolve competing claims to the trust remainder brought by JPMorgan Chase Bank (sued herein as Chase Manhattan Bank, N.A.), the trustee, and National Colonial Insurance Company (NCIC), an insolvent insurer undergoing liquidation in Kansas. For the reasons that follow, we conclude that Supreme Court did not have jurisdiction in this regard, and that the remainder of the trust should be transferred to NCIC's liquidator in Kansas.

### I.

In 1989, NCIC, an insurer organized under the laws of the State of Kansas, sought to write excess and surplus line insurance policies in New York. As a condition of doing business as an unauthorized insurer, Regulation 41 (11 NYCRR part 27) required that NCIC establish a trust fund with Chase, a quali-

fied financial institution. The trust fund, governed by a trust agreement, was exclusively available for payment of claims under policies issued to a resident of, or with respect to property situated in, a state in which NCIC was not licensed to conduct an insurance business. NCIC funded the trust by depositing $750,000 with Chase as trustee.

The trust agreement specified that, upon its termination and payment of outstanding liabilities, the remainder would be distributed to NCIC. In the event NCIC was found insolvent pursuant to the laws of Kansas, the trustee was to disburse the trust fund at the direction of the Superintendent of Insurance of the State of New York in accordance with the provisions of article 74 of the Insurance Law.

On September 21, 1990, the Kansas Insurance Department notified NCIC that the trust agreement did not comply with Kansas law and needed to be amended to insert certain mandatory language. Chase proposed alternative wording and advised that, "[i]n the event [this wording] is deemed unacceptable, [NCIC] will have to identify a new trustee and arrange for the transfer . . . of the trust assets." On March 8, 1991, NCIC advised Chase that the Kansas Insurance Department had rejected its proposed alternative wording; and on October 4, 1991, Chase notified NCIC that it could not accept the amendment to the trust agreement required by the Kansas Insurance Department. On June 11, 1992 and at NCIC's direction, Chase electronically transferred the trust's assets (NCIC's original deposit of $750,000 plus interest, for a total of $917,846) to NCIC's bank accounts. In so doing, Chase violated several of the trust agreement's express terms (as well as Regulation 41), including the five-year irrevocability period, the minimum funding provision and the requirement to notify the Superintendent upon the trust's termination.

By an order entered on July 16, 1993, the District Court of Shawnee County, Kansas, declared NCIC insolvent, placed NCIC in liquidation and appointed the Kansas Commissioner of Insurance as statutory liquidator of the estate. The liquidation order directed the Kansas liquidator to "take possession of [NCIC's] property, business and affairs," and vested him with "title to all [NCIC's] property, assets, [and] contracts." This order also enjoined and restrained all persons "from bringing, or further prosecuting" any actions or claims against NCIC or its "property or assets." The Kansas court retained jurisdiction "for the purpose of granting such other and further relief as the nature

of this cause or the interest of the policyholders, reinsureds, creditors or stockholders of [NCIC], or the members of the public may require." At the time the liquidation order was entered, the trust was unfunded, Chase having transferred all the trust's assets to NCIC's bank accounts the previous year.

By letter dated October 7, 1993, the New York State Insurance Department demanded a "complete explanation" from Chase as to why the bank had released the full amount of the trust funds to NCIC. Further, the Department requested Chase to "[k]indly advise what action [Chase] intends to take to restore the missing funds which were untimely released or to indemnify any claimants that do or will have monies due them under the terms of the trust agreement." In January 1994, Chase responded by replenishing the trust fund with $750,000 of its own.

On April 19, 1994, the Superintendent petitioned Supreme Court for an order authorizing him to take possession of the trust as conservator under article 74 of the Insurance Law. Chase filed an affidavit in the proceeding claiming entitlement to any funds remaining in the trust after valid policyholder and beneficiary claims had been satisfied. NCIC in liquidation (NCICL) also filed an affidavit, arguing that the trust remainder, if any, was part of the estate's general assets.

Chase took the position that it was entitled to any remainder because the trust's funds were comprised solely of monies that it had contributed. NCICL characterized this fact as "irrelevant":

> "[Chase] was obligated to maintain the trust in accordance with its terms and with Regulation 41. Simply because [Chase] breached its duty and was forced to return funds improperly transferred does not establish a claim to any funds remaining after all valid claims are paid. Once [Chase] transferred the funds back into the trust the funds became the property of the estate of NCIC. [Chase] ceased to have any claim to the funds."

Notwithstanding its posture in the New York proceeding, on July 18, 1994 Chase filed a $750,000 proof of claim with the Kansas liquidator.

On December 20, 1994, Supreme Court issued an order granting the Superintendent possession of the trust as conservator pursuant to Insurance Law § 7406. The New York order

"enjoined and restrained [all persons] from bringing or further prosecuting *in the State of New York*" (emphasis added) any action or claim against NCIC or the trust; and generally restrained all individuals from doing anything that might "waste" the trust or "allow or suffer the obtaining of preferences, judgments, attachments, garnishments or other liens, or the making of any levy against" the trust while in the Superintendent's possession and control as conservator. The order further directed the Superintendent to petition Supreme Court, on notice to Chase and the Kansas Insurance Commissioner, "for further direction should trust funds remain upon the satisfaction of all outstanding claims by NCIC's insureds and beneficiaries."

In February 2000, the Kansas court approved the Kansas liquidator's recommended allowances for claims to NCIC's estate. The Kansas order included Chase, with a claim of $750,000, as a Class IV general unsecured creditor of the estate. Chase did not file an objection to the Kansas order, or take any further action in Kansas to pursue its claim of ownership of the trust remainder.

On May 31, 2000, the Kansas liquidator prepared an unaudited Statement of NCIC's Net Assets in Liquidation. The report included as a "potential recoverable" $987,229 in a "State of New York Special Deposit." The Kansas liquidator noted that "a dispute surrounding release of this deposit to the NCIC estate may arise."

In December 2000, the Superintendent, as conservator of the trust, brought this special proceeding under article 74 of the Insurance Law. The Superintendent advised Supreme Court that Chase and the Kansas liquidator both claimed entitlement to the trust remainder, and sought an order directing its distribution. He relied on an áffidavit dated November 21, 2000, in which the Kansas liquidator averred that "(i) there are no pending claims upon and (ii) there will be no claims upon the Trust Fund currently in the possession of and conserved by the Conservator."

Supreme Court determined that the funds deposited by Chase had not become a part of NCIC's estate. Applying principles of trust law and equity, Supreme Court entered an order directing that the trust remainder be distributed to Chase because otherwise NCIC would enjoy an "unjust windfall." The Appellate Division reversed on the law, ordering distribution of the trust to the Kansas liquidator, reasoning that "[t]he Kansas

court had and has jurisdiction over the proper disposition of this trust asset and the liquidator in that proceeding should determine distribution of such asset" (296 AD2d 354, 354-355 [1st Dept 2002]). We granted Chase leave to appeal and now affirm.

II.

In 1939, the National Conference of Commissioners on Uniform State Laws endeavored to resolve some of the complexities of liquidating an insolvent insurance company with assets in multiple states by approving the Uniform Insurers Liquidation Act (UILA). New York adopted the UILA in 1940 "with the main purpose in mind of providing a uniform system for the orderly and equitable administration of the assets and liabilities of defunct multistate insurers" (*G.C. Murphy Co. v Reserve Ins. Co.*, 54 NY2d 69, 77 [1981]; *see* Insurance Law §§ 7408-7415). As NCIC is a "defunct multistate insurer[ ]," any analysis of New York's authority to administer its assets must begin with the UILA.[1]

Section 7410 (b)[2] of the UILA, entitled "Conduct of delinquency proceedings against insurers not domiciled in this state," sets forth the procedures that New York follows when assets of

---

1. Because of the similarities between New York and Kansas law, Kansas qualifies as a "reciprocal state" for purposes of the UILA (*see* Insurance Law § 7408 [b] [6] [defining "Reciprocal state" as "any state other than this state in which in substance and effect the provisions of this act are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer"]; *see* Kan Stat Ann §§ 40-3605—40-3658).

2. The text of section 7410 (b) provides that

"[t]he domiciliary receiver for the purpose of liquidating an insurer domiciled in a reciprocal state, shall be vested by operation of law with the title to all of the property, contracts, and rights of action, and all books and records of the insurer located in this state, and shall have the immediate right to recover balances due from local agents and obtain possession of any books and records of the insurer found in this state. He shall also be entitled to recover the other assets of the insurer located in this state except that upon the appointment of an ancillary receiver in this state, the ancillary receiver shall during the ancillary receivership proceedings have the sole right to recover such other assets. The ancillary receiver shall, as soon as practicable, liquidate from their respective securities those special deposit claims and secured claims which are proved and allowed in the ancillary proceedings in this state, and shall pay the necessary expenses of the proceedings. All remaining assets he shall promptly transfer to the domiciliary receiver."

a nondomiciliary insolvent insurer are located both within and without New York, and when receivers[3] have been appointed in both New York and the domiciliary state. This provision—and the UILA generally—recognizes the authority of the domiciliary state and its receiver over all of the insolvent insurer's assets, including those located in New York. Nonetheless, when a New York receiver has been appointed, New York has the primary right to exercise control over certain assets located within the state, even if a domiciliary receiver also exists. Under section 7410 (b), New York's authority includes the right to liquidate "special deposit claims" from these assets.

The UILA defines a "[s]pecial deposit claim" as "any claim secured by a deposit made pursuant to statute for the security or benefit of a *limited class* of persons, but not including any general assets" (§ 7408 [b] [9] [emphasis added]; *compare* § 7408 [b] [7] [defining "(g)eneral assets" as "(a)ssets held in trust and assets held on deposit for the security or benefit of *all* policyholders, or *all* policyholders and creditors in the United States" (emphasis added)]).[4]

Here, the trust was required in order for NCIC to do business in New York; it was created for the benefit of policyholders and beneficiaries of policies written in a state in which NCIC was not authorized to carry out an insurance business. Thus, the trust benefitted a limited class of people, and so was a special deposit (*see e.g. Murphy*, 54 NY2d at 75 n 2 ["The history of the Uniform Insurers Liquidation Act indicates that the term 'special deposit' was intended to mean security deposits exacted from a foreign insurer as a condition precedent to doing business in a State for purposes of providing a general fund for the protection of resident policyholders. . . . Such 'special deposits'

---

3. The UILA defines "[r]eceiver" as "receiver, liquidator, rehabilitator, or conservator as the context may require" (§ 7408 [b] [11]).

4. Kansas law defines "[g]eneral assets" as

"all property . . . not specifically mortgaged, pledged, *deposited* or otherwise encumbered for the security or benefit of specified persons or classes of persons. As to specifically encumbered property, 'general assets' includes all such property or its proceeds *in excess of the amount necessary to discharge the sum or sums secured hereby*. Assets held in trust and on deposit for the security or benefit of all policyholders or all policyholders and creditors, *in more than a single state*, shall be treated as general assets" (Kan Stat Ann § 40-3607 [i] [emphasis added]).

Thus, Kansas designates the remainder of a special deposit as a general asset of the estate, which is consistent with New York's treatment of "[g]eneral assets" and "[s]pecial deposit claim[s]."

are required in this State. (Insurance Law, §§ 103-104 [now §§ 1319-1320].)"]; *see also State ex rel. Ingram v Reserve Ins. Co.,* 303 NC 623, 629, 281 SE2d 16, 20 [1981] ["Deposits pursuant to Article 20 constitute a *trust* for the benefit of North Carolina policyholders and are not *assets* of the insolvent insurance company" (emphasis in original)]; *Commissioner of Ins. v Equity Gen. Ins. Co.,* 346 Mass 233, 239, 191 NE2d 139, 143 [1963] [statutory deposit by foreign insurance company is "a deposit for the benefit of all or specified Florida policyholders, and thus within . . . the term 'special deposit' "]).

New York's policy regarding its authority over statutory special deposits, and its ability to conserve these assets for the beneficiaries of a Regulation 41 trust, is consistent with the policy in Kansas, which adopted the National Association of Insurance Commissioners' (NAIC) Insurers Rehabilitation and Liquidation Model Act in 1991 (*see* Kan Stat Ann §§ 40-3605—40-3658). The Model Act's 1991 provisions concerning interstate relations mimic those of the UILA (*see* NAIC Model Laws, Regulations and Guidelines, 555-1, Insurers Rehabilitation and Liquidation Model Act § 55 legislative history). Thus, Kansas recognizes the right of an ancillary receiver to "liquidate from its securities those special deposit claims and secured claims which are proved and allowed in the ancillary proceedings" when a domiciliary receiver also exists (*compare* Kan Stat Ann § 40-3651 [c] *with* Insurance Law § 7410 [b]; *see also* Kan Stat Ann § 40-3650 [a]).

Indeed, the actions of the Kansas liquidator were entirely consistent with this view of New York's jurisdiction. He listed the Regulation 41 trust as a "Statutory Deposit" on his unaudited Statement of NCIC's Net Assets in Liquidation, and indicated that a "dispute" concerning the trust remainder existed. Moreover, nothing in the liquidation order contravenes New York's jurisdiction over the Regulation 41 trust. Kansas exercised jurisdiction over NCIC's assets; NCIC's interest in the trust fund was a contingent, remainder interest.

Notwithstanding the appointment of the Kansas liquidator and the liquidation proceeding underway in Kansas, the New York conservator had authority under the UILA to "recover" the Regulation 41 trust fund, and "liquidate" from it any claims made under covered policies (*see* Insurance Law § 7410 [b]). Jurisdiction over the trust did not rest exclusively with Kansas, as the Appellate Division determined; however, neither Chase nor NCIC was the holder or beneficiary of a policy protected under

the trust. Accordingly, their claims to the trust remainder could not be adjudicated by Supreme Court under the UILA's special deposit authority. We must therefore consider whether Supreme Court otherwise properly exercised jurisdiction to resolve Chase's and NCIC's competing claims to the trust remainder.

## III.

As we recognized in *Matter of Transit Cas. Co. (Digirol—Superintendent of Ins.)* (79 NY2d 13, 20 [1992]), which presented us with an issue concerning notice, "[o]n this and many other aspects of the liquidation process the [UILA] is silent because it was not intended as a comprehensive scheme displacing all State laws, substantive and procedural, relating to liquidation of insolvent insurance companies." We are now again faced with a question on which the UILA is silent: should competing claims to ownership of a trust remainder be adjudicated in the domiciliary state's courts or in the courts of the state where the trust's ancillary receiver was appointed? Unlike the matter of notice at issue in *Transit Casualty*, this question implicates one of the core "embarrassments" that the UILA was designed to remedy—"the ineffective administration of the liquidation process caused by differences in the laws of the various States regarding the title and right to possession of the property of a defunct nonresident insurer" (*Murphy*, 54 NY2d at 76, 77).

The UILA's only statement bearing on the trust remainder is that, after liquidating "those special deposit claims and secured claims which are proved and allowed in the ancillary proceedings in [New York], and . . . pay[ing] the necessary expenses of the proceedings," the ancillary receiver "shall promptly transfer [the remainder] to the domiciliary receiver" (Insurance Law § 7410 [b]). Thus, while silent regarding adjudication of competing claims of ownership of a trust remainder, the UILA provides a procedure to follow generally. We therefore conclude that in order to promote the UILA's goal of orderly and equitable liquidation proceedings, the domiciliary state is the proper forum in which to adjudicate competing claims to the trust remainder.

The Kansas liquidator included the trust remainder as an asset of NCIC's estate even though the remainder's value was contingent at the time. By entertaining Chase's claim of ownership, Supreme Court delayed the orderly administration of claims in Kansas. Once the conservator determined that there

were no special deposit claims, Supreme Court should have "promptly transfer[red]" the trust remainder to the Kansas liquidator. While the highly unusual facts of this case, involving withdrawal of the settlor's deposit to the trust and its replacement by the trustee, may complicate the UILA's plan for efficient administration, they should not be allowed to override it.

This approach is consistent with the modern trend in insurance liquidation as evidenced by the Model Act. In 1994, the Model Act was revised in a manner that substantially curtails the ancillary receiver's authority.[5] Specifically, the current version of the Model Act requires that, upon entry of a final order of liquidation, all special deposits "shall be delivered to the domiciliary liquidator" and held as a "general asset for the benefit of all creditors," and limits the ancillary receiver's authority to proceedings that "support" the domiciliary proceeding (*see* NAIC Model Laws, Regulations and Guidelines, 555-1, Insurers Rehabilitation and Liquidation Model Act § 57). These changes were intended "to discourage the retention of special or statutory deposits by nondomiciliary states in the event of a multistate insolvency." (*Id.* § 57 legislative history.) Further, the "basic principle behind the amendments is that insurers should be rehabilitated or liquidated in their state of domicile pursuant to the laws in that state, and that the domiciliary commissioner is in the best position to carry out that function" (*id.*).

Finally, Chase protests that it was barred by the New York order from bringing or prosecuting its claim to ownership of the trust remainder in the Kansas proceeding. The order, however, restrained Chase only from pursuing such a claim in New York while the trust was in the conservator's possession and control.[6] We have no way to know whether Chase's ownership claim would have been entertained if, as was the case in New York, Chase had raised the issue in an affidavit in the Kansas proceeding.[7]

---

**5.** Kansas adopted the Model Act in 1991, and has not amended its law to incorporate these 1994 revisions.

**6.** We note that Chase filed its proof of claim with the Kansas liquidator before the New York order was entered.

**7.** The Appellate Division relied on full faith and credit to determine that New York lacked jurisdiction to resolve Chase's claim. We find full faith inapplicable here, and instead rest our holding that Supreme Court lacked jurisdiction on the provisions of the UILA. Our decision today does not foreclose Chase from pressing a claim to ownership of the trust remainder in the ongoing Kansas liquidation proceeding.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT and GRAFFEO concur; Judges G.B. SMITH and R.S. SMITH taking no part.

Order affirmed, with costs.